Thomas GUSTAFSON, Respondent,

v.

Donna M. BENDA, Appellant.

No. 63857.

Supreme Court of Missouri,
En Banc.

Nov. 22, 1983.

As Modified on Denial of Rehearing
Dec. 20, 1983.

Gerre Langton, Sam P. Rynearson, St. Louis, for appellant.

Stephen H. Ringkamp, Thomas C. Hullverson, Hullverson, Hullverson & Frank, St. Louis, for respondent.

WELLIVER, Judge.

This case was transferred to this Court by the court of appeals after opinion.[1] Rule 83.02. We review the case as if it were on original appeal. Rule 83.09.

 The case involves a collision between plaintiff-respondent's motorcycle and defendant-appellant's automobile. The motorcycle was in the act of passing the automobile as the parties approached a "T" intersection. The accident occurred when appellant turned toward the left.[2] The sole issue involved and certified for our reexamination is the definition of "the point of imminent peril" or "the point of immediate danger." If that point is as we have previously defined it in *McClanahan v. St. Louis Public Service Co.*, 363 Mo. 500, 251 S.W.2d 704 (banc 1952), it is at the point at which appellant's automobile physically began to turn left, and, upon the facts of the case, respondent cannot recover. The court of appeals believed that *McClanahan* obliterated all distinction between the last clear chance and humanitarian negligence doctrines[3] and that this Court should examine the governing law.

1. The opinion of the court of appeals was reported in the advance sheets only. *Gustafson v. Benda*, 631 S.W.2d 655 (Mo.App.1982). A copy of that opinion is attached to our slip opinion for convenience. It is now ordered that the court of appeals opinion officially be reported immediately following the report of this opinion. [Published at 661 S.W.2d 29]

2. The detailed facts and a scholarly analysis thereof appear in the court of appeals opinion.

3. The common law doctrine of last clear chance comprises three basic situations: (1) a plaintiff in a position of actual peril and a defendant who knows of that peril; (2) a plaintiff in a position of actual peril and a defendant who in the exercise of the requisite degree of care should know of that peril; and (3) a plaintiff who because of his inattentiveness or obliviousness is in a position of peril and a defendant who knows of the plaintiff's position and knows or has reason to know of his obliviousness. 2 Harper & James, The Law of Torts § 22.13, at 1245 (1956). Missouri's "humanitarian" doctrine allows recovery in a fourth situation, in which a plaintiff is in a position of peril because of his inattentiveness or obliviousness and a defendant is negligent only in his similar inattentiveness or obliviousness to

In effect, the court of appeals has asked us to arrive at ultimate justice through a redefinition of the "point of imminent peril." The reexamination of the "point of imminent peril" so tactfully tendered by the court of appeals invites us to respond that there must be a better way to attain fairness and justice than to continue to indulge in fictions in the application of a bundle of antiquated and fairly inflexible rules of tort law.

■ For many years, authorities addressing the last clear chance doctrine[4] have recognized and

[a] number of commentators have observed that last clear chance is one step, and a rather significant one, toward a system of comparative negligence.[5] As pointed out by Fleming James,[6] the first cases of contributory negligence dealt with situations where the plaintiff's negligence was later in point of time than the defendant's. The directness of the relationship between the act and the injury was emphasized rather than the negligent quality of the act. As the idea of negligence gained recognition, there was a shift to the culpability of the conduct involved.

Whatever the difficulties implicit in the application of the doctrine of last clear chance, it did represent an attempt to shift the loss to the party who was more to blame. It was thus ethically and morally preferable to the prior rule that the slightest degree of negligence would bar the plaintiff's recovery. If all the intricacies of proximate cause, sequential negligence, and last opportunity are brushed aside and the problem viewed simply and realistically, it will be seen that the last clear chance cases represent nothing more or less than a comparison of fault.

As Dean Prosser has so aptly pointed out, however, the trouble with last clear chance is that it shifts the entire loss to the defendant.[7] "It is still no more reasonable to charge the defendant with the plaintiff's share of the consequences of his fault than to charge the plaintiff with the defendant's; and it is no better policy to relieve the negligent plaintiff of all responsibility for his injury than it is to relieve the negligent defendant. The whole floundering, haphazard, make-shift device operates in favor of some plaintiffs by inflicting obvious injustice upon some defendants; but it leaves untouched the greater number of contributory negligence cases in which the necessary time interval or element of discovery does not appear and the last clear chance cannot apply."[8] The obvious solution was a system of comparative negligence the adoption of which can be traced to a century of experience with last clear chance.

H. Woods, *The Negligence Case: Comparative Fault* 14–15 (1978) (footnotes renumbered).

The inevitability of the evolution from contributory negligence through the doctrine of last clear chance to some form of comparative negligence or fault is demonstrated by the number of states now utilizing some form of comparison to determine fault and liability in tort cases. Forty states, Puerto Rico, and the Virgin Islands now utilize some form of comparative fault or negligence.[9]

---

plaintiff's peril. *See id. See generally* Becker, *The Humanitarian Doctrine, The Work of the Missouri Supreme Court for the Year 1949,* 15 Mo.L.Rev. 359 (1950).

4. Unless otherwise specified, the term "last clear chance" as used herein also encompasses Missouri's humanitarian doctrine.

5. James, *Last Clear Chance: A Transitional Doctrine,* 47 Yale L.J. 704 (1938); MacIntyre, *The Rationale of Last Clear Chance,* 53 Harv.L. Rev. 1225 (1940); Philbrick, *Loss Apportion-*

ment in Negligence Cases, 99 U.Pa.L.Rev. 572 (1951).

6. James, *supra* note 5, at 704.

7. Prosser, *Comparative Negligence,* 51 Mich.L. Rev. 465 (1953).

8. *Id.* at 474.

9. Thirty-two states, Puerto Rico, and the Virgin Islands have adopted comparative negligence or fault by statute. Ark.Stat.Ann. §§ 27–1763

In 1977 this Court on its own motion invited all interested parties to brief and argue the question whether it should adopt comparative negligence. *Epple v. Western Auto Supply Co.,* 557 S.W.2d 253 (Mo. banc 1977). At that time the Court reiterated the view expressed in *Anderson v. Cahill,* 528 S.W.2d 742, 749 (Mo. banc 1975), that it had the inherent power to do so, but it deferred the matter to the legislature, which had recently been considering comparative negligence bills.

The following year, this Court took a step in the direction of "comparative fault" when it abandoned the concept of "active-passive negligence" in favor of "comparative fault" in multiple defendant cases. *Missouri Pacific Railroad v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978). During what might be described as the shakedown period for *Whitehead & Kales* and its newly adopted concept of comparative fault, the Court again deferred to the legislature and declined to adopt a comprehensive system of comparative fault by judicial decision. *Steinman v. Strobel,* 589 S.W.2d 293 (Mo. banc 1979).

The cases coming before this Court lead us to believe that Missouri lawyers have treated *Whitehead & Kales* as an invitation for them to try all multiple defendant cases on the theory of comparative fault. Although Missouri lawyers have pursued with

vigor the direction pointed by *Whitehead & Kales,* our opinions have recognized exceptions to the application of *Whitehead & Kales.* In *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss,* 588 S.W.2d 489 (Mo. banc 1979), we recognized the statutory immunity of employers in worker's compensation cases and declined to leave them as a party defendant for the sole purpose of determining their comparative fault. In *Parks v. Union Carbide Corp. (Chemlime),* 602 S.W.2d 188 (Mo. banc 1980), contractual liability was excluded from comparison in multiple defendant cases. In *State ex rel. Tarrasch v. Crow,* 622 S.W.2d 928 (Mo. banc 1981), we limited our decis·on to the release in question rather than state a general policy regarding releases, thereby leaving open the general question of how released parties would be handled with regard to comparison of their fault. In *Kendall v. Sears, Roebuck & Co.,* 634 S.W.2d 176 (Mo. banc 1982), we reaffirmed our commitment to parental immunity and declined to keep the parent a party for the purpose of determining his comparative fault. In *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727 (Mo. banc 1982), we permitted relative or comparative fault to be determined in a separate and subsequent action.

We have remained quiescent more than five years while waiting for the legislature

to −1765 (1979); Colo.Rev.Stat. § 13–21–111 (1973 & Supp.1982); Conn.Gen.Stat. § 52–572h, −572o (1983); Ga.Code Ann. § 105–603 (Supp.1982); Haw.Rev.Stat. § 663–31 (1976); Idaho Code §§ 6–801 to −806 (1979); Ind.Code Ann. § 34–4–33–1 to 8 (Burns Supp.1983); Kan.Stat.Ann. § 60–258a, 258b (1976); La.Civ. Code Ann. art. 2323 (West Supp.1983); Me. Rev.Stat.Ann. tit. 14, § 156 (1964); Mass.Gen. Laws Ann. ch. 231, § 85 (Michie/Law.Coop.Supp.1983); Minn.Stat.Ann. § 604.01–.02 (West Supp.1983); Miss.Code Ann. § 11–7–15 (1972); Mont.Code Ann. §§ 27–1–702, −703 (1981); Neb.Rev.Stat. § 25–1151 (1979); Nev.Rev.Stat. § 41–141 (1979); N.H.Rev.Stat.Ann. § 507:7–a (Supp.1979); N.J. Stat.Ann. §§ 2A:15–5.1 to −5.3 (West Supp. 1983–1984); N.Y.Civ.Prac.Law § 1411 (McKinney 1976); N.D.Cent.Code § 9–10–07 (1975); Ohio Rev.Code Ann. § 2315.19 (Page 1982); Okla.Stat.Ann. tit. 23, §§ 13–14 (West Supp. 1982–1983); Or.Rev.Stat. § 18–470 (1981); Pa. Stat.Ann. tit. 42, § 7102 (Purdon 1982 and Supp.1983–1984); P.R.Laws Ann. tit. 31, § 5141 (1968); R.I.Gen.Laws §§ 9–20–4, −4.1 (Supp.1982); S.D.Comp.Laws Ann. § 20–9–2 (1979); Tex.Rev.Civ.Stat.Ann. art. 2212a (Vernon Supp.1982–1983); Utah Code Ann. §§ 78–27–37 to −43 (1953); V.I.Code Ann. tit. 5, § 1451 (Supp.1982); Vt.Stat.Ann. tit. 12, § 1036 (Supp.1983); Wash.Rev.Code Ann. §§ 4.22.005–.920 (Supp.1983–1984); Wis.Stat. Ann. § 895.045 (West 1983); Wyo.Stat. § 1–1–109 (1977). Eight other states have done so by judicial decision. *Kaatz v. State,* 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 532 P.2d 1226, 119 Cal.Rptr. 858 (1975); *Hoffman v. Jones,* 280 So.2d 431 (Fla.1973); *Alvi v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981); *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982); *Kirby v. Larson,* 400 Mich. 585, 256 N.W.2d 400 (1977); *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981); *Bradley v. Appalachian Power Co.,* 256 S.E.2d 879 (W.Va.1979).

to act. In *Steinman v. Strobel*, Chief Justice Donnelly wrote:

> I am mindful of the *classical common law* process articulated in R. Bridwell and R. Whiten, *The Constitution and the Common Law* 13–15 (Lexington, Massachusetts: D.C. Heath and Company, 1977). That process is given flexibility to embrace change by the doctrine "of desuetude, or the repeal of custom by disuse. Just as custom would be gradually introduced and adopted by consent, so might it gradually be abrogated by the 'tacit consent of all.'" *Id.* at 22.

> In James, *Comments on Maki v. Frelk,* 21 Vand.L.Rev. 891, 895 (1968), it was noted "that juries now do for plaintiffs illicitly what the change [to comparative negligence] would do for them forthrightly. * * * Juries * * * probably speak for the community sense of fairness more faithfully than do legislatures. *Consistent jury acceptance of proportional negligence * * * suggests that legislative failure to enact this reform reflects inertia rather than community sentiment.*"

589 S.W.2d at 296 (emphasis added to last sentence).

In the interim, our opinions have left the practicing bar with little guidance as to the basis, extent, and consequences of the doctrine of comparative fault that we enunciated in *Whitehead & Kales.* We now are past the time when we should have resolved the uncertainty surrounding comparative fault by expanding the application of the doctrine. We believe the bar anticipated and expected that we would do so.

Little more can be said about the historical development of the philosophy of the doctrine of comparative fault than what we have already written in *Whitehead & Kales, Steinman, Chemlime, Maryland Heights, Tarrasch, Kendall,* and *Safeway.* Our five years of experience with a limited application of comparative fault fully demonstrates that fairness and justice can best be achieved through a broader application of that doctrine. It is workable and will fulfill the needs of our complex modern society.

Expansion of comparative fault as first enunciated in *Whitehead & Kales* is in the best interest of all litigants. Comparative fault affords practicing attorneys a less complex and far more effective method for representing the rights of their clients, either plaintiff or defendant. Joining all parties to a transaction in a single lawsuit for the comparison of the fault of all concerned can best expedite litigation and relieve the congestion of overcrowded courts.

All that remains is for us to find the simplest and most clear, concise, and direct method for adopting a comprehensive system of comparative fault for the trial of tort cases and a procedure for accomplishing the transition to comparative fault. The first step is to reverse and remand this case for retrial based upon the comparative fault of the parties. Except for the instant case and interim cases where the parties can mutually agree, comparative fault shall apply only in cases in which the trial begins after the date of the publication of this opinion in the advance sheets of the Southwestern Reporter. Insofar as possible this and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act §§ 1–6, 12 U.L.A. Supp. 35–45 (1983),[10] a

---

10. The General Assembly's recent revision of § 537.060, RSMo 1978, prescribing a method of apportioning a judgment against multiple tortfeasors when one defendant has obtained a release, conflicts with the method outlined in § 6 of the Uniform Comparative Fault Act. The amended provision in relevant part provides:

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death such agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide, however *such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater.* The agreement shall discharge the tortfeasor to whom it is given from all liability for contribution or non-contractual indemnity to any other tortfeasor. The term "non-contractual indemnity" as used in this section refers to indemnity between joint tortfeasors culpably negligent, having no legal relationship to each other and

copy of which, with commissioners' comments, is appended to this opinion as Appendix A. By this opinion we do not intend to impair the existing right of a claimant to recover the total amount of his judgment against any defendant who is liable.

Until the committee on instructions provides pattern instructions, the parties will be responsible for preparing their own instructions and any necessary special interrogatories or special verdicts.[11]

■ Because we supplant the doctrines of contributory negligence, last clear chance, and humanitarian negligence with a comprehensive system of comparative fault, this cause must be, and is, reversed and remanded for a new trial based upon a determination of the comparative fault of the parties.

Reversed and remanded for a new trial consistent with this opinion.

HIGGINS and DONNELLY, JJ., and SEILER, Sr. Judge, concur.

BILLINGS, J., concurs in separate opinion filed.

RENDLEN, C.J., dissents in separate opinion filed.

GUNN, J., dissents in separate opinion filed.

BLACKMAR, J., not participating because not a member of the Court when cause was submitted.

does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

1983 Mo.Legis.Serv. 398–99 (Vernon) (emphasis added). The Uniform Act reduces the amount of the plaintiff's claim against remaining defendants "by the amount of the released person's equitable share of the obligation," rather than by the amount for which the release was obtained. Section 537.060, as amended, is modeled after § 4(a) of the Uniform Contribution Among Tortfeasors Act (1955). *See* 12 Uniform Laws Annotated 63, 98 (1975). The comment appended to § 6 of the Uniform Comparative Fault Act indicates that its drafters chose not to adopt this approach because "it may be unfair to the other defendants and if the goodfaith requirement is consci-entiously enforced settlements may be discouraged."

We believe the approach taken in § 6 has the advantage of treating both plaintiffs and defendants equitably while also being logically consistent with the principle of proportionate fault. We doubt that either plaintiffs or defendants want their verdicts to depend on judicial determination of "good faith." Therefore, we respectfully invite the General Assembly to reconsider the language in § 537.060, as amended. In the meantime, however, insofar as § 6 is inconsistent with § 537.060, we will defer to the terms of the statute.

**11.** *See* H. Woods, *The Negligence Case: Comparative Fault* 381–406 (Cum.Supp.1983) for possible suggested forms.

## APPENDIX A
# UNIFORM COMPARATIVE FAULT ACT

### Historical Note

The Uniform Comparative Fault Act was approved by the National Conference of Commissioners on Uniform State Laws in 1977. Section 3 of the Act was amended by the National Conference in 1979.

### Commissioners' Prefatory Note

*Plaintiff's Fault.* The harsh all-or-nothing rule of contributory negligence at common law has not been properly ameliorated by the several exceptions also developed at common law. Whether the general rule or an exception applies, one party or the other is always treated unfairly. This has been widely recognized and, at the present time (1977), the Federal Government and two-thirds of the States (33) have adopted some form of comparative fault. This is usually by statute but also by judicial decision.

The language of the statutes varies considerably, and the form adopted often comes about as a result of a political compromise and without adequate consideration of the practical implications. This Uniform Act has been worked on for five years by a special committee, which has had the benefit of comments from many sources. Careful consideration has been given to all potential problems, and specific provisions are made for most of them. This Act therefore serves two important purposes: (1) it addresses the problems and provides what are regarded as the best solutions for them, and (2) it provides the opportunity for creating a desirable uniformity throughout the country.

A very important question arises in the very beginning: What type of comparative fault should be adopted? The "pure type" is presently followed by the Federal Government, nine states and almost all common law jurisdictions outside the United States. Many states, however, have adopted a modified type, which takes one of two forms, providing that a plaintiff who is at fault can recover diminished damages but that he cannot recover if his negligence either (1) "is equal to," or (2) "is greater than," that of the defendant.

The modified type has several serious logical and practical disadvantages:

1. If both parties have been injured, the modified type forces one party to bear all of his own loss, together with the greater part of the other party's loss, in addition. This result is therefore worse than that of the common law contributory negligence rule. A slight alleviation under the not-greater-than form, which allows recovery when the parties are each 50% at fault, forces a cognizant jury always to find for 50% negligence if it wants to reach a fair result.

2. If there are several defendants at fault, the modified type produces a confused jumble. The plaintiff's fault may be less than that of some defendants and greater than that of others. If defendants having to pay seek contribution from those not under obligation to the plaintiff, the answer is uncertain; and when counterclaims arise, no solution seems available. The problem is avoided in some modified-type states by providing that the plaintiff's negligence bars recovery only if it is greater than the combined negligence of all the defendants. Although this is a helpful provision, it is essentially adopting the pure form in this situation.

3. If the plaintiff's fault is greater than that of the defendant, he cannot recover under the modified type. Yet, if, as a result of this, the statute leaves him under the common law, including its exceptions (such as last clear chance, or ordinary contributory negligence in an action based on strict liability) he can nevertheless recover full damages, if he comes within an exception. The anomaly therefore arises that he may be better off if his negligence is found to be greater than that of the defendant and he thus recovers full damages, than if his negligence is found to be less than that of the defendant and his damages are diminished.

4. A difference of a single point in the percentage of fault allocated to the claimant may determine whether he can recover anything at all—not just how much. It is quite unrealistic to expect a jury to reach a decision this precise and then require the whole issue of liability to depend upon it. An arbitrary decision of this nature is very conducive to appeals and the development of highly technical distinctions by the appellate court.

The single disadvantage urged against the pure type is that it fails to prevent the bringing of "nuisance suits." Yet the cure of the modified form is distinctly an overcure, and therefore worse than the disease. How many more

times is the plaintiff's negligence likely to be from 51% to 90% of the total than it is to be 90 to 100% of the total? And when it approximates 100%—the true nuisance claim—the trial court may be expected to control the matter.

The innate fairness of the pure type contrasts with the nondiscriminating rough justice of the modified type, which casts out many justified claims in order to be sure to eliminate a few unjustified ones, and impels the decision for the pure form. It is significant that when the courts, as distinguished from the legislatures have adopted a form of comparative fault, the great majority of them have selected the pure type, and that England, Ireland, the Canadian provinces and Australian states have all adopted the pure form.

*Contribution.* The original common law rule was that there is no contribution among joint tortfeasors, no matter what the nature of the tort. Some states, however, have judicially modified this rule, especially in the case of negligence. Many more states have passed statutes of various kinds providing for contribution, with the result that a substantial majority of the states now have contribution in some form and the Restatement (Second) of Torts § 886A, now provides for it.

The NCCUSL has promulgated two uniform contribution Acts—the first in 1939, superseded by a revised act in 1955. Both of these Acts provide for pro rata contribution, which may be suitable in a state not applying the principle of comparative fault, but is inappropriate in a comparative-fault state apportioning ultimate responsibility on the basis of the proportionate fault of the parties involved.

It has therefore been decided not to amend the separate Uniform Contribution Among Tortfeasors Act, 1955, but to leave that Act for possible use by states not adopting the principle of comparative fault. Instead, the present Act contains appropriate sections covering the rights existing between the parties who are jointly and severally liable in tort. The 1955 Act should be replaced by this Act in any state that adopts the comparative fault principle, and would be eventually replaced.

## UNIFORM COMPARATIVE FAULT ACT

| Sec. | | Sec. | |
|---|---|---|---|
| 1. | Effect of Contributory Fault. | 7. | Uniformity of Application and Construction. |
| 2. | Apportionment of Damages. | | |
| 3. | Set-off. | 8. | Short Title. |
| 4. | Right of Contribution. | 9. | Severability. |
| 5. | Enforcement of Contribution. | 10. | Prospective Effect of Act. |
| 6. | Effect of Release. | 11. | Repeal. |

### Law Review Commentaries

Assumption of risk and misuse in strict tort liability; prelude to comparative fault. James B. Sales. 11 Texas Tech L.Rev. 729 (1980).

Comparative contribution. 14 John Marshall L.Rev. 173 (1980).

Comparative negligence collides with strict liability. 19 Washburn L.J. 76 (1979).

Comparative negligence: Development in the United States and status in Louisiana. John W. Wade. 40 La.L.Rev. 299 (1980).

Contribution among antitrust violators. 29 Catholic U.L.Rev. 669 (1980).

Judicial adoption of comparative fault in South Carolina. Jerry J. Phillips. 32 S.C.L.Rev. 295 (1980).

Uniform Comparative Fault Act: What should it provide? John W. Wade. 10 U.Mich.J.L.Rev. 220 (1977).

### Section I. [Effect of Contributory Fault]

(a) In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines, such as last clear chance.

(b) "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

## COMPARATIVE FAULT ACT §1

### Commissioners' Comment

This Section states the general principle, that a plaintiff's contributory fault does not bar his recovery but instead apportions damages according to the proportionate fault of the parties.

*Harms Covered.* The specific application of that principle, as provided for in this Act, is confined to physical harm to person or property. But it necessarily includes consequential damages deriving from the physical harm, such as doctor's bills, loss of wages or costs of repair or replacement of property. It does not include matters like economic loss resulting from a tort such as negligent misrepresentation, or interference with contractual relations or injurious falsehood, or harm to reputation resulting from defamation. But failure to include these harms specifically in the Act is not intended to preclude application of the general principle to them if a court determines that the common law of the state would make the application.

*Conduct Covered.* (a) Defendant's Conduct. The Act applies to "acts or omissions that are in any measure negligent or reckless toward the person or property . . . of others." This includes the traditional action for negligence but covers all negligent conduct, whether it comes within the traditional negligence action or not. It includes negligence as a matter of law, arising from court decision or criminal statute. "In any measure" is intended to cover all degrees and kinds of negligent conduct without the need of listing them specifically.

In some states reckless conduct goes by a different name, such as willful or wanton misconduct. The decision must be made in the particular state whether the language used is sufficiently broad for the purpose or if additional language is needed.

Although strict liability is sometimes called absolute liability or liability without fault, it is still included. Strict liability for both abnormally dangerous activities and for products bears a strong similarity to negligence as a matter of law (negligence per se), and the factfinder should have no real difficulty in setting percentages of fault. Putting out a product that is dangerous to the user or the public or engaging in an activity that is dangerous to those in the vicinity involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.

An action for breach of warranty is held to sound sometimes in tort and sometimes in contract. There is no intent to include in the coverage of the Act actions that are fully contractual in their gravamen and in which the plaintiff is suing solely because he did not recover what he contracted to receive. The restriction of coverage to physical harms to person or property excludes these claims.

The Act does not include intentional torts. Statutes and decisions have not applied the comparative fault principle to them. But a court determining that the general principle should apply at common law to a case before it of an intentional tort is not precluded from that holding by the Act.

For certain types of torts, such as nuisance, the defendant's conduct may be intentional, negligent or subject to strict liability. In the latter two instances the Act would apply, but not in a case in which the defendant intentionally inflicts the injury on the plaintiff.

A tort action based on violation of a statute is within the coverage of the Act if the conduct comes within the definition of fault and unless the statute is construed as intended to provide for recovery of full damage irrespective of contributory fault.

(b) Plaintiff's Conduct. "Fault," as defined in Subsection (b), includes conduct of the plaintiff or other claimant, as well as a defendant.

"Contributory fault chargeable to the claimant" includes legally imputed fault as in the cases of principal and agent and of an action for loss of services of a spouse. It also covers a situation in which fault is not imputed but would still have barred recovery prior to passage of the Act—as, for example, a wrongful-death action in which the decedent's contributory negligence would have barred recovery even though it was not imputed to the person bringing the action.

Contributory fault diminishes recovery whether it was previously a bar or not, as, for example, in the case of ordinary contributory negligence in an action based on strict liability or recklessness. Last clear chance is expressly included with its variations. "Assumption of risk" is a term with a number of different meanings—only one of which is "fault" within the

## § 1 COMPARATIVE FAULT ACT

meaning of this Act. This is the case of unreasonable assumption of risk, which might be likened to deliberate contributory negligence and means that the conduct must have been voluntary and with knowledge of the danger. As used in this Act, the term does not include the meanings (1) of a valid and enforceable consent (which is treated like other contracts), (2) of a lack of violation of duty by the defendant (as in the failure of a landowner to warn a licensee of a patent danger on the premises), or (3) of a reasonable assumption of risk (which is not fault and should not have the effect of barring recovery).

"Misuse of a product" is a term also with several meanings. The meaning in this Section is confined to a misuse giving rise to a danger that could have been reasonably anticipated and guarded against. The Act does not apply to a misuse giving rise to a danger that could not reasonably have been anticipated and guarded against by the manufacturer, so that the product was therefore not defective or unreasonably dangerous.

The doctrine of avoidable consequences is expressly included in the coverage.

*Causation.* For the conduct stigmatized as fault to have any effect under the provisions of this Act it must have had an adequate causal relation to the claimant's damage. This includes the rules of both cause in fact and proximate cause.

"Injury attributable to the claimant's contributory fault" refers to the requirement of a causal relation for the particular damage. Thus, negligent failure to fasten a seat belt would diminish recovery only for damages in which the lack of a seat-belt restraint played a part, and not, for example, to the damage to the car. A similar rule applies to a defendant's fault; a physician, for example, negligently setting a broken arm, is not liable for other injuries received in an automobile accident.

**1979 Addition to Comment:** *Adaptation of the Act to Modified Form of Comparative Negligence.* If a state now using the modified form of comparative negligence should decide that in the light of its experience it is wedded to that form and not willing to change to the pure form, the Act may be adapted for this purpose, as indicated below, by adding the words in italics:

### Section 1. [Effect of Contributory Fault]

(a) In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant, *if not greater than the combined fault of all other parties to the claim, including third-party defendants and persons released under Section 6,* diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines, such as last clear chance.

(b) *Whenever both parties to a claim and counterclaim have sustained damage caused by fault or both, each party can recover from the other in proportion to their relative fault in accordance with Section 3, regardless of whose fault is the greater.*

(c) "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting and enforceable express consent, measure of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

### Library References

Negligence ⊂≈97 to 101.

C.J.S. Negligence §§ 131, 169 et seq.

### Section 2. [Apportionment of Damages]

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under Section 6, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating:

> (1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under Section 6. For this purpose the court may determine that two or more persons are to be treated as a single party.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under Section 6, and enter judgment against each party liable on the basis of rules of joint-and-several liability. For purposes of contribution under Sections 4 and 5, the court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) Upon motion made not later than [one year] after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. The party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

### Commissioners' Comment

*Parties.* It is assumed that the state procedure provides for bringing in third-party defendants as parties. If not, the procedural statutes or rules may need to be amended to permit it, at least for purposes of contribution.

The limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what amount of fault should be attributed to him, or whether he will ever be sued, or whether the statute of limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiff and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allocated to each of the other parties, whether plaintiff or defendant.

In situations such as that of principal and agent, driver and owner of a car, or manufacturer and retailer of a product, the court may under appropriate circumstances find that the two persons should be treated as a single party for purposes of allocating fault.

*Percentages of fault.* In comparing the fault of the several parties for the purpose of obtaining percentages there are a number of implications arising from the concept of fault. The conduct of the claimant or of any defendant may be more or less at fault, depending upon all the circumstances including such matters as (1) whether the conduct was mere inadvertence or engaged in with an awareness of the danger involved, (2) the magnitude of the risk created by the conduct, including the number of persons endangered and the potential seriousness of the injury, (3) the significance of what the actor was seeking to attain by his conduct, (4) the actor's superior or inferior capacities, and (5) the particular circumstances, such as the existence of an emergency requiring a hasty decision.

A rule of law that a particular defendant owes a higher degree of care (as in the case of a common carrier of passengers) or a lesser degree of care (as in the case of an automobile host in a state having a valid automobile-guest statute) or that no negligence is required (as in the case of conducting blasting operations in an urban area) is important in determining whether he is liable at all. If the liability has been established, however, the rule itself does not play a part in determining the relative proportion of fault of this party in comparison with the others. But the policy behind the rule may be quite important. An error in driving on the part of a bus driver with a load of passengers may properly produce an evaluation of greater fault than the same error on the part of a housewife gratuitously giving her neighbor a ride to the shopping center; and an auto-

## § 2 COMPARATIVE FAULT ACT

mobile manufacturer putting out a car with a cracked brake cylinder may, even in the absence of proof of negligence in failing to discover the crack, properly be held to a greater measure of fault than another manufacturer producing a mechanical pencil with a defective clasp that due care would have discovered.

In determining the relative fault of the parties, the fact-finder will also give consideration to the relative closeness of the causal relationship of the negligent conduct of the defendants and the harm to the plaintiff. Degrees of fault and proximity of causation are inextricably mixed, as a study of last clear chance indicates, and that common law doctrine has been absorbed in this Act. This position has been followed under statutes making no specific provision for it.

*Joint and Several Liability and Equitable Shares of the Obligation.* The common law rule of joint-and-several liability of joint tortfeasors continues to apply under this Act. This is true whether the claimant was contributorily negligent or not. The plaintiff can recover the total amount of his judgment against any defendant who is liable.

The judgment for each claimant also sets forth, however, the equitable share of the total obligation to the claimant for each party, based on his established percentage of fault. This indicates the amount that each party should eventually be responsible for as a result of the rules of contribution. Stated in the judgment itself, it makes the information available to the parties and will normally be a basis for contribution without the need for a court order arising from motion or separate action.

*Reallocation.* Reallocation of the equitable share of the obligation of a party takes place when his share is uncollectible.

Reallocation takes place among all parties at fault. This includes a claimant who is contributorily at fault. It avoids the unfairness both of the common law rule at joint-and-several liability, which would cast the total risk of uncollectibility upon the solvent defendants, and of a rule abolishing joint-and-several liability, which would cast the total risk of uncollectibility upon the claimant.

*Control by the court.* The total of the several percentages of fault for the plaintiff and all defendants, as found in the special interrogatories, should add up to 100%. Whether the court will inform the jury of this will depend upon the local practice.

The court should be able to exercise any usual powers under existing law of setting aside or modifying a verdict if it is internally inconsistent or shows bias or prejudice, etc. On the same basis as the remittitur principle, a court might indicate its intent to set aside a percentage allocation unless the parties agreed to a somewhat different one.

*Illustration No. 1.* (Simple 2-party situation).

A sues B. A's damages are $10,000.

A is found 40% at fault.

B is found 60% at fault.

A recovers judgment for $6,000.

*Illustration No. 2.* (Multiple-party situation).

A sues B, C and D. A's damages are $10,000.

A is found 40% at fault.

B is found 30% at fault.

C is found 30% at fault.

D is found 0% at fault.

A is awarded judgment jointly and severally against B & C for $6,000. The court also states in the judgment the equitable share of the obligation of each party:

A's equitable share is $4,000 (40% of $10,000).

B's equitable share is $3,000 (30% of $10,000).

C's equitable share is $3,000 (30% of $10,000).

*Illustration No. 3.* (Reallocation computation under Subsection (d)).

Same facts as in Illustration No. 2.

On proper motion to the court, C shows that B's share is uncollectible. The court orders that B's equitable share be reallocated between A and C.

A's equitable share is increased by $1,714 (4/7 of $3,000).

C's equitable share is increased by $1,286 (3/7 of $3,000).

### Law Review Commentaries

Apportionment of losses under comparative fault laws. Richard N. Pearson. 40 La.L.Rev. 343 (1980).

### Library References

Negligence ☞97.

C.J.S. Negligence §§ 169, 170.

## COMPARATIVE FAULT ACT § 3

### Section 3. [Set-off]

A claim and counterclaim shall not be set off against each other, except by agreement of both parties. On motion, however, the court, if it finds that the obligation of either party is likely to be uncollectible, may order that both parties make payment into court for distribution. The court shall distribute the funds received and declare obligations discharged as if the payment into court by either party had been a payment to the other party and any distribution of those funds back to the party making payment had been a payment to him by the other party.

### Amendments

Section amended in 1979. As originally approved in 1977, section read:
"A claim and counterclaim shall be set off, and only the difference between them is recoverable in the judgment. However, if either or both of the claims are covered by liability insurance and an insurance carrier's liability under its policy is reduced by reason of the set- off, the insured is entitled to recover from the carrier the amount of the reduction. Amounts so recovered shall be credited against pertinent liability policy limits. For purposes of uninsured-motorist and similar coverages, the amounts so recovered shall be treated as payment of those amounts to the insured by the party liable."

### Commissioners' Comment

A set-off involves a single claim and counterclaim. If there are multiple defendants, separate set-off issues may arise between a claimant and each of several defendants, but each set-off would be a separate issue, determined independently of the others. The same principle applies in case of a cross-claim subject to a counterclaim.

Whether the rule is for or against set-off, if it should be applied categorically to all situations it would produce unfair results in some of them. In attaining a fair application to a particular factual situation, consideration needs to be given to the circumstances of whether each party is able to pay his obligation and whether the payment comes from his own pocket or from liability insurance covering him. The provisions of this Section provide a fair solution to each situation, as illustrated below.

*Illustration No. 4.* (Parties fully covered by liability insurance.) A sues B. B counterclaims. Each is found to have suffered $100,000 in damage. Each is fully covered by liability insurance. A is found 30% at fault. B is found 70% at fault. Under the statutory provision there is no set-off except by agreement of the parties, and it would not be in their best interests here to agree to a set-off. A recovers $70,000 from B, and B recovers $30,000 from A.

*Illustration No. 5.* (No insurance but both parties able to pay judgments.) The same facts as in Illustration 4, but there is no liability insurance. Each is able to pay the judgment against him. If the parties do not agree to a set-off, A receives $70,000 from B, and B receives $30,000 from A. For their own convenience they may find it simpler to agree on a set-off, with A receiving $40,000 from B.

*Illustration No. 6.* (No insurance; B is able to pay and A is not.) As in Illustration 4, each party has $100,000 damages, A is 30% at fault and B is 70% at fault. Neither party has liability insurance coverage. B moves the court to require both parties to make payment into court for distribution. Finding it likely that A's obligation will be uncollectible the court issues the order. B pays into court $70,000; A can pay nothing. The court distributes $40,000 to A and $30,000 back to B. This is treated as if B had directly paid A $70,000 and A had directly paid B $30,000 and the obligations of both parties are extinguished.

*Illustration No. 7.* (A has insurance; B does not and is unable to pay.) The same facts as in Illustration 6, but B has no insurance and cannot pay, while A has full liability insurance. A's motion that both parties pay into court is granted. A's insurance company pays $30,000. A pays nothing. The court distributes the $30,000 to A. This extinguishes the liability of A and his insurance company under the liability coverage, and B's liability to A reduced from $70,000 to $40,000. For application of any uninsured-motorist coverage contained in A's insurance policy, the court's delivery of the $30,000 to A is treated as a direct payment by B to A.

*Illustration No. 8.* (Both parties have inadequate insurance coverage and no other available funds.)

A is 30% negligent, has damages of $50,000 and carries liability insurance of $20,000. B is 70% negligent, has damages of $100,000 and carries liability insurance of $30,000.

A therefore owes B $30,000 and has a claim against B of $35,000; and B owes A $35,000 and has a claim against A of $30,000.

On granting of a motion to pay into court, A's carrier pays $20,000 which is initially allocated to B as payment to him of $20,000 and reduces A's debt to B to $10,000 and

B's carrier pays $30,000, which is initially allocated to A as payment to him of $30,000 and reduces B's debt to A to $5,000.

The court now reallocates to B $10,000 from A's initial allocation of $30,000, leaving $20,000 for A. It also reallocates to A $5,000 from B's initial allocation of $20,000, leaving $15,000 for B.

A is thus entitled to the $20,000 remaining in the initial allocation, plus $5,000 from the subsequent allocation, making a total of $25,000; and

B is entitled to the $15,000 remaining in the initial allocation, plus $10,000 from the subsequent allocation, making a total of $25,000.

Of the $50,000 paid in, A receives $25,000 and B receives $25,000. All obligations are discharged.

For a complex illustration like No. 8, the process of tracking literally the language of the Section is somewhat laborious and difficult to work out. Fortunately, it is possible to reach exactly the same result much more simply and easily by using the formula, $D = C - O + P$ to determine the amount each claimant is entitled to receive. D signifies the amount to be distributed to the particular claimant from the funds paid into court; C signifies the amount of his claim after it has been reduced by the court because of his own negligence; O signifies the amount that he is found by the court to owe to the other party; and P signifies the amount that he has paid into court.

Use of this formula in each of illustrations above will reach exactly the same result as that which is stated in the illustration. Thus, in Illustration 8, the formula $D = C - O + P$ operates like this: For A: $35,000 - $30,000 + $20,000 = $25,000. For B: $30,000 - $35,000 + $30,000 = $25,000.

Observe that if use of the formula produces a negative number for one of the two parties, it corresponds with a number larger by that figure than the amount of deposit with the court and indicates that the party with the negative figure continues to owe that amount to the other party. This occurs, for example, in Illustration No. 7.

The system for distributing the funds outlined by the section is not the only one that could be utilized but it appears to be the fairest and most equitable. It gives due consideration to the relative amounts owed by each party and the relative amounts paid by each; and their relative fault is of course already taken into consideration in determining the amounts of their enforceable claims.

### Library References

Set-Off and Counterclaim ☜22 et seq.

C.J.S. Set-Off and Counterclaim § 23 et seq.

### Section 4. [Right of Contribution]

(a) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution is each person's equitable share of the obligation, including the equitable share of a claimant at fault, as determined in accordance with the provisions of Section 2.

(b) Contribution is available to a person who enters into a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable.

### Commissioners' Comment

Sections 4, 5 and 6 are expected to replace the Uniform Contribution Among Tortfeasors Act (1955) in a state following the principle of comparative fault. The three sections, however, apply whether the plaintiff was contributorily at fault or not.

Section 4 is in general accord with the provisions of the 1955 Uniform Act, but the test for determining the

measure of contribution and thus establishing the ultimate responsibility is no longer on a pro rata basis. Instead, it is on a basis of proportionate fault determined in accordance with the provisions of Section 2. A plaintiff who is contributorily at fault also shares in the proportionate responsibility.

Joint-and-several liability under the common law means that each defendant contributing to the same harm is liable to him for the whole amount of the recoverable damages. This is not changed by the Act. Between the defendants themselves, however, the apportionment is in accordance with the equitable shares of the obligation, as established under Section 2.

If the defendants cause separate harms or if the harm is found to be divisible on a reasonable basis, however, the liability may become several for a particular harm, and contribution is not appropriate. See Restatement (Second) of Torts § 433A (1965).

### Law Review Commentaries

Apportionment of losses under comparative fault laws. Richard N. Pearson. 40 La.L.Rev. 343 (1980).

### Library References

Contribution ⬡5. C.J.S. Contribution § 11.

### Section 5. [Enforcement of Contribution]

(a) If the proportionate fault of the parties to a claim for contribution has been established previously by the court, as provided by Section 2, a party paying more than his equitable share of the obligation, upon motion, may recover judgment for contribution.

(b) If the proportionate fault of the parties to the claim for contribution has not been established by the court, contribution may be enforced in a separate action, whether or not a judgment has been rendered against either the person seeking contribution or the person from whom contribution is being sought.

(c) If a judgment has been rendered, the action for contribution must be commenced within [one year] after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against him and commenced the action for contribution within [one year] after payment, or (2) agreed while action was pending to discharge the common liability and, within [one year] after the agreement, have paid the liability and commenced an action for contribution.

### Commissioners' Comment

*Illustration No. 9.* (Equitable shares previously established by court).

A sues B and C. His damages are $20,000.

A is found 40% at fault.

B is found 30% at fault.

C is found 30% at fault.

A, with a joint-and-several judgment for $6,000 against B and C, collects the whole amount from B.

On proper motion to the court, B is entitled to contribution from C in the amount of $3,000.

*Illustration No. 10.* (Equitable shares not established).

A sues B. His damages are $20,000.

A is found 40% at fault.

B is found 60% at fault.

Judgment for A for $12,000 is paid by B.

B then brings a separate action seeking contribution from C, who was not a party to the original action.

C is found to be liable for the same injury, and as between B and C, C is found to be 50% at fault.

Judgment for contribution for $6,000 is awarded to B.

If A had voluntarily joined or been brought in as a party to this second action, proportionate fault would have been determined for all parties, including A and B, and contribution against C would have been awarded on that basis.

## § 5 COMPARATIVE FAULT ACT

**Library References**

Contribution ☞5. C.J.S. Contribution § 11.

### Section 6. [Effect of Release]

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

### Commissioners' Comment

*Effect of release on liability of other tortfeasors.* The provision that release of one tortfeasor does not release the others unless the release so provides is taken from the Uniform Contribution Among Tortfeasors Act (1955). It is a common statutory provision.

*Effect of release on right of contribution.* The question of the contribution rights of tortfeasors A and B against tortfeasor C, who settled and obtained a release or covenant not to sue admits of three answers: (1) A and B are still able to obtain contribution against C, despite the release, (2) A and B are not entitled to contribution unless the release was given not in good faith but by way of collusion, and (3) the plaintiff's total claim is reduced by the proportionate share of C. Each of the three solutions has substantial disadvantages, yet each has been adopted in one of the uniform acts. The first solution was adopted by the 1939 Uniform Contribution Act. Its disadvantage is that it discourages settlements; a tortfeasor has no incentive to settle if he remains liable for contribution. The second solution was adopted by the 1955 Contribution Act. While it theoretically encourages settlements, it may be unfair to the other defendants and if the good-faith requirement is conscientiously enforced settlements may be discouraged.

The third solution is adopted in this Section. Although it may have some tendency to discourage a claimant from entering into a settlement, this solution is fairly based on the proportionate-fault principle.

*"Discharges . . . from all liability for contribution."* A reallocated share of contribution, as provided in Section 2(d), comes within the meaning of this phrase, and the discharge of the released person under this Section applies to that liability as well. Since the claim is reduced by the amount of the released person's equitable share, the increased amount of that share as a result of the reallocation is charged against the releasing person.

*Illustration No. 11.* (Effect of release).

A was injured through the concurrent negligence of B, C and D. His damages are $20,000. A settles with B for $2,000.

The trial produces the following results:

 A, 40% at fault (equitable share, $8,000)

 B, 30% at fault (equitable share, $6,000)

 C, 20% at fault (equitable share, $4,000)

 D, 10% at fault (equitable share, $2,000)

A's claim is reduced by B's equitable share ($6,000). He is awarded a judgment against C and D, making them jointly and severally liable for $6,000.

Their equitable shares of the obligation are $4,000 and $2,000 respectively.

*Illustration No. 12.* Release to one tortfeasor; another's share is uncollectible).

Same facts as in Illustration No. *11.*

It is now found that D's share of $2,000 is uncollectible. Upon proper motion to the court that share is reallocated as follows:

A's equitable share is increased by $\frac{4}{9}$ (his own proportionate fault), plus $\frac{3}{9}$ (B's proportionate fault), or $1,556.

C's equitable share is increased by $\frac{2}{9}$, or $444.

*Immunities.* The problem of a wrongdoer who is entitled to a legal immunity could be treated like a released tortfeasor in this Section—join him to the action to determine his equitable share of the obligation and subtract it from the amount of the claimant's recovery. But this would

## COMPARATIVE FAULT ACT

unfairly cast the whole loss on the claimant. This might be adjusted by spreading the immune party's obligation among all of the parties at fault, including the claimant, as in Subsection 2(d). But this same result is also accomplished by leaving the immune party out of the action altogether; a far easier and simpler solution. This Act therefore makes no provision for immunities. It must be borne in mind, however, that some states treat some immunities as not applying to a suit for contribution. This raises different problems, which can be handled under third-party practice.

*Worker's compensation.* An injured employee who has received or is entitled to worker's compensation benefits from his employer may ordinarily bring a tort action against a third party, such as the manufacturer of the machine that injured him, and recover for his injury in full. Under the rule in most states, the defendant is not entitled to contribution from the employer, even though the employer was negligent in maintaining the machine or instructing the employee in its use. This casting of the whole loss on the tort defendant may be unfair and greatly in need of legislative adjustment. It is so affected by the policies underlying the worker's compensation systems, however, and these policies vary so substantially in the several states that it was felt inappropriate to include a section on the problem in a uniform act.

Several solutions are possible. Thus, contribution against the employer may be provided for. Or the recovery by the employee may be reduced by the proportionate share of the employer. Or the amount of that proportionate share may be divided evenly between the employer and employee, so that the compensation system bears responsibility for it. Provision also needs to be made for the relation of the tort defendant to the compensation benefits. In any event, contributory negligence on the part of the employee will come within the scope of this Act and will affect the amount of recovery.

BILLINGS, Judge, concurring.

Because I believe pure comparative fault is more equitable and just than the ancient and harsh, all or nothing, rule of contributory negligence, and the mathematical gymnastics employed in last clear chance and humanitarian cases, I concur.

Historically, contributory negligence, last clear chance, and humanitarian negligence, were born by judicial decisions. By judicial decision we bury them.

RENDLEN, Chief Justice, dissenting.

Just five years ago, this Court in *Epple v. Western Auto Supply Co.*, 557 S.W.2d 253 (Mo. banc 1977), maintained its view that the general principles of negligence law which historically have existed and well served the people in this state should not be abrogated by judicial edict as mandated today in the principal opinion. The Court in *Epple* concluded

> ... not to adopt any form of comparative negligence at this time. The subject is complex and takes a variety of forms in the several states where it is in use. ...
> that conversion to such a new system involves many policy decisions may be the reason why most states which have adopted the doctrine in some form, have done so by legislative action. In this connection ... during the past four years the General Assembly has considered on at least six occasions proposed acts which included some form of comparative negligence....

*Id.* at 254.

Two years later, this Court in *Steinman v. Strobel*, 589 S.W.2d 293 (Mo. banc 1979), considered again whether comparative negligence should be judicially adopted in Missouri, and again rejected such judicial action by *per curiam* reaffirmance of the view expressed in *Epple v. Western Auto Supply Co., supra.* Further rationale for the Court's deference to the legislature was provided by Welliver, J., concurring:

> To adopt comparative negligence without undertaking a systematic treatment of this multitude of related issues would be to place the bar on a violent and

stormy sea of uncertainty and frustration that would make the post-Whitehead and Kales era seem a serene and placid mountain lake in comparison. Any single opinion that would attempt to deal with all of these issues could only result in a giant legislative enactment by judicial fiat. My inability to find agreement among scholars, judges, lawyers, or my brothers of this court as to the exact form of "comparative negligence" best suited to our social and economic needs also makes me reluctant to do other than concur in the per curiam.

589 S.W.2d at 294.

In the interim, the General Assembly has considered at least six more proposals for some form of comparative negligence. Thus, the legislature has considered the question of comparative negligence in recent years on 12 occasions (six times in the four years prior to 1977 and six times during 1979 to 1982) and on 12 occasions has rejected the scheme. The legislature, whose prime responsibility is to set the public policy for Missouri, has found no reason to change the public policy of Missouri and revamp the entire law with respect to the trial of negligence cases. Thus, under the time honored canons of construction, the legislative intent seems clearly against adopting for Missouri that which the majority would thrust upon us. Further, as in the *Epple* case, *supra,* none of the parties to this proceeding has urged us in pleading, brief or argument to abandon the present law for a standard of comparative fault. The proposition was not advanced at trial, in the appeal to the Eastern District or in the briefs submitted here after transfer was ordered. Instead, the majority gratuitously raises the point and reaches a conclusion that will rend asunder the established tort law of our state. This decision will scrap the principles of primary and contributory negligence and last clear chance used to determine tort liability in Missouri for more than 100 years, *see e.g. Huelsenkamp v. Citizens' Ry. Co.*, 37 Mo. 538 (1866), along with the established forms and pleadings, patterns of proof and approved jury in-

structions. Little imagination is required to envision the volume of litigation and endless appeals required to return a semblance of stability to our tort law. Such matters present complex policy dilemmas requiring a systematic approach best suited for resolution by the legislative branch of government. In this connection, it should be noted the legislature remains free to change the substantive law of our state which can include the prompt reinstatement of traditional tort principles.

GUNN, Justice, dissenting.

I have two reasons for dissenting.

First, I believe the imposition of comparative negligence is purely a matter for legislative action. The majority opinion states that thirty-two of the forty states which utilize some form of comparative negligence or fault have done so by legislative enactment—clear recognition that this subject is for the General Assembly. I believe we have intruded into an area which belongs to the legislature. We have pierced and circumvented the revetment so carefully designed to separate, segregate, preserve and distinguish the identities and functions of judicial, legislative and executive branches. It is not that the law is immutable or galvanized, but I believe imposition of comparative negligence or fault is not a matter for judicial fiat.

My second basis for dissent is that I believe that the plaintiff made a submissible case for jury consideration under the facts as reported in *Gustafson v. Benda,* 661 S.W.2d 29 (Mo.App.1982), appended to the majority opinion.

The circumstances of this case support the fact that it falls within the last clear chance doctrine rather than the humanitarian doctrine, and there is a distinction to be made between the zones of peril in each. I believe it important to maintain the integrity of both doctrines and the differences between their zones of peril.

In last clear chance, when the plaintiff is in the zone of peril, there is nothing he can do to extricate himself. In this particular case, plaintiff was in the last clear chance posture, for when defendant decided and started to make her turn, plaintiff was in a position of peril from which there was no escape by anything he might accomplish. Defendant's negligence was in making her turn. It seems to me that plaintiff was in the last clear chance zone of peril situation as the turn was made.

I believe that *McClanahan v. St. Louis Public Service Co.,* 363 Mo. 500, 251 S.W.2d 704 (banc 1952), referred to in the majority and Eastern District opinions, failed to recognize and maintain the distinction between the two doctrines—last clear chance and humanitarian—and to the extent that it fails to do so, that case should no longer be followed.