Thomas **GUSTAFSON,**
**Plaintiff-Respondent,**

v.

Donna M. **BENDA, Defendant-Appellant.**

No. 43071.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 2, 1982.

Sam P. Rynearson, Gerre S. Langton, Evans & Dixon, St. Louis, for defendant-appellant.

Thomas C. Hullverson, Stephen H. Ringkamp, St. Louis, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from a judgment against her of $20,200 in a jury-tried personal injury case. The main contention on appeal is that plaintiff failed to make a submissible case under the humanitarian doctrine on his specific theory that defendant was negligent in failing to swerve or slow her vehicle and that that negligence caused plaintiff's injuries.

Plaintiff was riding a motorcycle on two-lane Highway 141 in St. Louis County. He began passing a series of cars ahead of him which were traveling at 30 m.p.h. Plaintiff's speed during the passing was 40 m.p.h. After successfully passing several vehicles, plaintiff arrived at the left rear of defendant's car. The front of the motorcycle was even with defendant's rear fender or tire, when defendant "veered sharply to the left" to go onto a road making a T-intersection with 141. Plaintiff attempted to swerve his motorcycle to the left and believed he may have swerved a foot or two when the left front fender of defendant's car struck his right leg and the motorcycle. The contact with the motorcycle was approximately in its center. The collision did not knock the motorcycle over and plaintiff was able to stop it approximately .2 of a mile down the road. Defendant's speed at

all times was 30 m.p.h., plaintiff's was 40 m.p.h.[1]

■ Defendant contends that the evidence was insufficient to establish that defendant had sufficient time after plaintiff reached a point of immediate danger to have taken any action which would have prevented the accident. Both parties are in agreement that the point of immediate danger was reached when defendant's vehicle physically began its turn. In the present state of the law this is correct. *See McClanahan v. St. Louis Public Service Co.*, 363 Mo. 500, 251 S.W.2d 704 (Mo.banc 1952) [1]; *Granger v. ITT Continental Baking Co.*, 536 S.W.2d 894 (Mo.App.1976). We will discuss that matter more fully later. Given that point of immediate danger we conclude that plaintiff's evidence was insufficient to make a case.

The plaintiff's evidence established that defendant's vehicle moved to its left no more than 10 feet from its original position to the point of collision. Defendant was traveling 45 feet per second at the time. There was no evidence of the arc of turn other than defendant veered "sharply" left. While the lateral movement of 10 feet in such a turn would obviously take longer than if defendant were approaching plaintiff at a right angle, it is clearly sheer speculation to conclude that in a sharp veer such lateral movement at defendant's speed would take longer than the judicially recognized three-fourths of a second reaction time. On cross-examination plaintiff said the time between the commencement of the turn and the collision was "Some part of a second, I guess—a second." This answer at best establishes plaintiff's guess of a maximum time of a second and equally establishes the time may have been less than that. There was no evidence of how quickly defendant might have been able to swerve or slow the vehicle or that such slowing or swerving as might have been possible would have avoided the collision.

We are aware that courts have held that movement of a steering wheel creates an almost instantaneous response by the vehicle. *Jenkins v. Jordan*, 593 S.W.2d 236 (Mo. App.1979) [5, 6]. But, when dealing with times as brief as those involved here (¼ second at best being the difference between plaintiff's "guess" of a second and the accepted reaction time) we cannot take judicial notice that such response would occur quickly enough to have avoided this accident.

■ Plaintiff also invokes the *res ipsa loquitur* doctrine of humanitarian negligence—"almost escaping." This contention is based upon defendant's answers on cross-examination that it was "possible" that another six or twelve inches between the vehicles might have avoided the accident. From this plaintiff concludes that in the time available defendant could have created that much space by slowing or swerving. There are at least two things wrong with this argument. First, the questions posed called for a conclusion regarding a hypothetical situation by a lay witness and defendant's objection should have been sustained. The testimony was improperly admitted and plaintiff cannot rest the submissibility of its case on such non-probative evidence. *Galovich v. Hertz Corp.*, 513 S.W.2d 325 (Mo.1974) [10]. Secondly, if the question and answer were permissible, a jury can only base its verdict upon a factual situation which is more probable than not. *Lewis v. Hubert*, 532 S.W.2d 860 (Mo.App. 1975) [21, 22]. That it was "possible" that six or twelve inches would have avoided a collision does not make it more likely or probable that such distance would have done so. "Possible" encompasses the entire range of probability from highly improbable to almost sure and is insufficient by itself to allow a jury to make a finding of probability. *Osborn v. McBride*, 400 S.W.2d 185 (Mo.1966) [6, 7]; *Wheaton v. Reiser Company*, 419 S.W.2d 497 (Mo.App.1967) [5].

---

1. We set out the facts most favorable to plaintiff consistent with his theory of the case and his evidence. Defendant's testimony was so inconsistent with plaintiff's evidence that it may not be used to support the submissibility of plaintiff's case. *Fisher v. Gunn*, 270 S.W.2d 869 (Mo.1954) [3–5]. Plaintiff so concedes.

There was no other evidence to establish the requisite probability. The impact was to the center of plaintiff's motorcycle and there was no credible evidence to establish that a swerve or slowing possible in the time available would have avoided the accident. Plaintiff failed to make a submissible case under his submitted theory which was mandated by the law of this state as it presently stands and under that law we would be required to reverse outright the judgment in plaintiff's favor.

We are convinced, however, that such a result is unjust and is based upon court decisions which have erroneously defined the zone of "imminent peril" (now immediate danger) to be applied to fact situations such as this one. Missouri's "humanitarian doctrine" is an extension of the "last clear chance" doctrine recognized in some form in the common law of most American jurisdictions. Common law last clear chance encompasses three basic situations: (1) a plaintiff in a position of actual peril and a defendant who knows of that peril; (2) a plaintiff in a position of actual peril and a defendant who in the exercise of the requisite degree of care should know of that peril; and (3) a plaintiff who is in a position of peril because of his inattentiveness or obliviousness and a defendant who knows or has reason to know of that obliviousness and knows of the plaintiff's position. Harper and James, The Law of Torts, Vol. 2, Sec. 22.13, p. 1245. In each of those cases defendant may be liable, regardless of plaintiff's negligence in placing himself in the position of peril, if the defendant can in the exercise of the requisite degree of care and with safety to himself and others avoid injury to the plaintiff, i.e., if he has the "last clear chance" to avoid the accident. Missouri's "humanitarian" negligence adds to that list of situations one involving a plaintiff in a position of peril because of his inattentiveness or obliviousness and a de-

fendant whose only negligence is his similar inattentiveness or obliviousness to plaintiff's peril.[2] Becker, The Humanitarian Doctrine, 15 Mo.L.Rev. 359, (1950). Missouri courts and lawyers through the years have tended to lump all three last clear chance situations and the humanitarian doctrine together under the label of "humanitarian negligence" without delineation of the differences which exist between the various situations.[3] *Miller v. St. Louis Public Service Co.*, 375 S.W.2d 641 (Mo.App. 1964) [1]. The result has been that the legal requirements which govern this general class of cases are those necessary to keep within some reasonable bounds those situations which are the least justifiable from a liability standpoint, i.e., the "humanitarian" concept. This becomes particularly apparent when dealing with the zone of imminent peril or immediate danger.

In the first two last clear chance situations, plaintiff has by definition placed himself into a position of peril from which he can no longer extricate himself. His safety is solely dependent upon the care which the defendant exercises. In such a factual situation defendant's obligation under the law should not only be to take such evasive action as necessary to avoid injuring plaintiff but also to initially avoid taking any action which will cause injury to the plaintiff in such a position of peril. *McClanahan v. St. Louis Public Service Co.*, supra, presents just such a situation. There the plaintiff, a trespasser, was hanging onto the side of a moving streetcar. He was clearly in a position of danger from which he could not safely extricate himself. The motorman knew or should have known of this position of peril and presumably should not have done anything which could cause injury to this imperiled plaintiff. The Supreme Court held, however, that plaintiff did not reach a position of imminent peril until the

---

2. "Humanitarian" negligence is so much a part of the fabric of Missouri law that no real purpose would be served in questioning a doctrine which takes two parties simultaneously and identically negligent and imposes liability on one of them.

3. One writer has suggested that as many as 90% of the cases delineated by Missouri courts as "humanitarian" are in fact "last clear chance" cases. *See* Becker, The Humanitarian Doctrine, *supra.*

motorman began jerking the car and after that began there was no adequate time before plaintiff fell off for the motorman to take any other action to keep plaintiff from falling. In short, plaintiff's injury was non-compensable because the motorman, with actual or constructive knowledge of plaintiff's position of actual peril, was permitted to negligently adopt a course of conduct causing plaintiff's injury and was freed from liability because he could not thereafter reverse the effects of that negligence. For similar situations, *see Granger v. I.T.T. Continental Baking Co., supra,* and *Russell v. St. Louis County Cab Co., Inc.,* 493 S.W.2d 26 (Mo.App.1973). So it is in the case at bar. Plaintiff, through his alleged negligence in passing within 100 feet of an intersection (Sec. 304.016.4(2) RSMo 1978), placed himself in a position of peril when he was at some point behind or adjacent to and to the left of defendant. At that point his safety was solely in the hands of defendant; plaintiff no longer could protect himself. A jury could find that defendant knew or should have known of this position and should not under the circumstances have even begun to turn left. When plaintiff reached the position of peril only defendant had the last clear chance to avoid injury to plaintiff, and it was negligent for defendant thereafter to initiate a course of action which would cause injury to plaintiff.[4] *McClanahan, supra,* rejects this analysis.

A similar analysis can be made of the third category of last clear chance. There the defendant's actual knowledge of plaintiff's position of peril imposes a duty upon him to avoid engaging in any conduct which could result in injury to plaintiff because of plaintiff's obliviousness. None of these three situations are comparable to "humanitarian negligence" where by definition two oblivious parties have by their concurrent actions created the position of immediate danger of which neither has actual knowledge.

Admittedly the definition of imminent peril articulated in *McClanahan* is reasonable and logical under humanitarian negligence. In those cases plaintiff's position of peril is created by, *and continues in existence because of,* his own negligence and defendant's similar inattentiveness. Plaintiff retains the ability to avoid the accident presumably until both parties reach the point of no return when neither party can prevent the accident.[5] Until, therefore, the defendant's actions combined with plaintiff's actions evidence that an accident will occur if one or both do not take some further action, there is presumably no reason for defendant to have constructive knowledge of plaintiff's inattention. A driver is not required to presume obliviousness, i.e., negligence, of other drivers or pedestrians, or that another is oblivious to danger until that danger becomes sufficiently imminent to require some action. The point therefore when a defendant "should know" of the obliviousness of plaintiff, and therefore come under a duty to take some action, is that point defined in *McClanahan*. However, the plaintiff's position of peril when actual or when known is not the same as his position of peril because of mutual obliviousness. This was recognized in *Banks v. Morris & Co.,* 302 Mo. 254, 257 S.W. 482 (1924) which eliminated the substantive difference between extricability and obliviousness in determining whether a case had been pled under the humanitarian doctrine. But *Banks* specifically recognized that the position of peril is the chief fact of liability in the genre of humanitarian cases. The plaintiff's position of peril is what triggers the defendant's duty to prevent injury or death—knowledge, extricability, and obliviousness are evidentiary facts utilized to establish the creation of that position of peril. *McClanahan,* by defining the zone of immi-

---

**4.** At trial plaintiff's attorney argued that plaintiff's peril commenced at some time before defendant began her turn and stated that defendant had the "last clear chance" to avoid the accident. On appeal plaintiff concedes the position of immediate danger established by

*McClanahan v. St. Louis Public Service Co., supra.*

**5.** If at some point only defendant can prevent the accident, then the case becomes one under the first two last clear chance situations.

nent peril in all humanitarian cases, including last clear chance cases, as that which should be utilized only where both parties are oblivious, correspondingly lessened the defendant's duty to prevent injury or death in the common law last clear chance situations. In doing so, the Supreme Court in *McClanahan* specifically overruled six of its prior decisions involving plaintiffs in a position of physical peril (not oblivious peril) where defendant's liability was held to be properly based upon defendant's initiating action after knowledge, actual or constructive, of that position of peril. In short, *McClanahan* eliminated all distinction between last clear chance and humanitarian negligence.

We believe that under a proper definition of position of peril under the last clear chance doctrine plaintiff here made a submissible case. We are bound, however, by the definition of imminent peril found in *McClanahan*. That case precludes plaintiff from recovering. We also believe that plaintiff's theory of recovery was based upon that case and its progeny, which precluded him from submitting what we consider the proper theory to the jury. Were we free to do so we would remand to give plaintiff an opportunity to submit his case on the proper theory. But we are not so free. We therefore transfer this case to the Supreme Court of Missouri for reexamination of the law, particularly *McClanahan v. St. Louis Public Service Co., supra.*

Cause transferred to the Supreme Court.

SATZ and PUDLOWSKI, JJ., concur.