William LEWIS, Jr.,
Plaintiff-Respondent,

v.

David D. RENNER,
Defendant-Appellant.

No. 46444.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 11, 1984.

Samuel T. Vandover, St. Louis, for defendant-appellant.

Samuel A. Goldblatt, St. Louis, for plaintiff-respondent.

KELLY, Presiding Judge.

David D. Renner, appellant, appeals from a judgment entered in favor of William E. Lewis, respondent, in the Circuit Court of St. Louis County for damages in an amount of $25,000.00.

On appeal appellant raises the following Points Relied On:

1.  The trial court erred by submitting Instruction No. 4 to the jury because same constituted a prejudicial deviation from MAI 17.15 and because there was no evidence to support its submission;

2.  The trial court erred by giving MAI 4.01, the damage instruction, without modification in accordance with the "Notes on Use"; and

3.  The court erred by its refusal to sustain appellant's oral motion for continuance on the grounds of surprise caused by respondent's having been in a subsequent accident which caused severe injury to his left leg and left knee.

Respondent has challenged these Points Relied On in his brief contending that they preserve nothing for review because they fail to comply with Rule 84.04(d) V.A.M.R.

■ Rule 84.04(d) V.A.M.R. requires that points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with the Rule. Compliance with the rule governing the statement of points relied upon in appellate briefs is mandatory. *Pickett v. Stockard*, 605 S.W.2d 196, 197[2] (Mo.App.1980). While there is some authority for ignoring failure to comply with this requirement where previous notice of the violation was not given and an opportunity to correct the errors was not afforded an appellant, *Empire Gas Corporation v. Small's LP Gas Company, et al.*, 637 S.W.2d 239, 245[8] (Mo.App. 1982), appellant was put on notice by respondent's brief of his failure to comply with the Rule, but made no effort to supplement his brief, correct this deficiency, nor comply with the Rule.

■ Appellant's first point relied on fails to specify what deviation in MAI 17.15 there was, nor why there was no evidence to support the submitted instruction. With respect to his second point relied on appellant has not specified what modification in the damage instruction, MAI 4.01, was required by the "Notes on Use" nor how he was prejudiced by the failure to make the modification he contends should have been made. His third point relied on also fails to state with specificity how the failure to grant his oral motion for a continuance prejudiced him other than his contention he was surprised. Appellant's failure to comply with the Rule renders whatever point he is trying to make inscrutable and, hence, unreviewable.

■ Despite his failure to comply with Rule 84.04(d) V.A.M.R., appellant has not requested that we afford review of his appeal as "plain error" as authorized by Rule 84.13(c), nor is there any assignment by appellant, as there could have been, that respondent failed to make a case for the jury on humanitarian negligence other than his contention that there was no evidence to support the humanitarian verdict-directing instruction, MAI 17.15. However the question of whether a submissible case was made is "inherent in every case that comes to an appellate court." *Gibbs v. Bardahl Oil Company*, 331 S.W.2d 614, 620[1] (Mo. 1960); *Revere Copper & Brass Inc. v. Manufacturers' Metals & Chemicals, Inc., et al.*, 662 S.W.2d 866, 869[1] (Mo.App. 1983).

■ In determining whether a plaintiff has made a submissible case, a reviewing court must consider evidence in a light most favorable to the plaintiff and give plaintiff the benefit of all favorable inferences that reasonably might be drawn from the evidence, but the evidence and the inferences must establish every element and not leave any issue to speculation. *Meyers v. City of Louisiana*, 637 S.W.2d 219, 221[2] (Mo.App.1982). In order to establish a submissible case under the humanitarian doctrine, a party must establish that, 1) plaintiff was in a position of immediate danger; 2) defendant knew or should have known of plaintiff's position of peril; 3) defendant, after receiving such notice, had the present ability to have averted the impending injury without harming himself or others; 4) defendant failed to exercise the requisite care to avert injury, and 5) damage to the plaintiff resulted. *Banks v. Morris & Co.*, 302 Mo. 254, 257 S.W. 482, 484[2] (banc 1924); *Meyers*, supra, l.c. 221[1].

With these legal principles in mind and viewing the evidence in a light most favorable to the respondent, the evidence supports a finding that the respondent at the time of the occurrence, shortly after 6:00 p.m. on June 26, 1978, was standing in the driveway of his parents' home at 11350 Oak Street, Bridgeton, Missouri, with his girlfriend. Two other friends came up and joined them. At this time appellant drove

his El Camino pick-up truck westwardly on Oak Street. This El Camino was red in color, and had wide tires, approximately 20 inches wide and referred to by one of the respondent's witnesses as "sports 60's," on the rear wheels. The rear end sat up higher than the ordinary El Camino. There were three passengers in the El Camino; appellant, appellant's girlfriend, Lisa Carson, and Mike Abrams.

Respondent had known appellant and Abram for about a year and during that time had problems with Abram. They argued off and on. Abram would call respondent names like "S.O.B." and they had a couple of arguments, but no fisticuffs.

As appellant's El Camino was proceeding westwardly along Oak Street in the vicinity of 11350 Oak Street, it slowed down and Abram called out to appellant, "You dumb S.O.B." and a few other names, as the El Camino proceeded westwardly down the street. The El Camino returned, this time proceeding eastwardly up the street, and when it got in front of respondent's house, came to a stop. At this time respondent yelled, "What's going on?", started walking toward the El Camino and asked why they were calling him names. The door on the passenger side was partially open. Abrams called respondent a name again and respondent called him a name and almost simultaneously the two started grabbing at each other. Abram grabbed respondent by his shirt and tried to pull him into the vehicle.

Respondent also grapped Abram's shirt and the two scuffled—it was mostly grabbing, shoving and pushing. Respondent was trying to back up a little while the two continued grabbing at each other's shirt. He was half in and half out of the El Camino. Appellant took off without any warning and ran over respondent's left foot causing the injuries for which respondent instituted this action.

The crucial question is whether under these factual circumstances respondent made a submissible case of humanitarian negligence.

Appellant argues that there is no evidence that while his El Camino remained stopped respondent was then in immediate danger of being injured; that respondent testified that appellant could not have seen his legs and feet in relation to the El Camino and its wheels, and therefore respondent did not present sufficient evidence to support a humanitarian submission. He relies on *McClanahan v. St. Louis Public Service Co.*, 363 Mo. 500, 251 S.W.2d 704 (1952).

The key requisite for a submissible case under the humanitarian doctrine is a showing that the plaintiff was in a position of immediate danger. Of all the elements in a humanitarian doctrine case, the exact point where the plaintiff's position is deemed to be one of "immediate danger", is the most actively disputed. *Reichert v. Lynch*, 651 S.W.2d 141, 143[2] (Mo. banc, 1983).

"Immediate danger" is "that position of danger to the plaintiff, whether or not the plaintiff was negligent in getting there, in which by reason of the then existing circumstances, if unchanged, injury to the plaintiff is reasonably certain and not a mere possibility. *Epple v. Western Auto Supply Co.*, 548 S.W.2d 535, 540[6] (Mo. banc, 1977).

The question when and where plaintiff came into a position of immediate danger is a jury question; however, there must be substantial evidence from which the jury can make this determination. *Epple*, id., l.c. 540[7].

We conclude there is no substantial evidence to support a humanitarian submission, because so long as appellant's El Camino remained in a stopped position respondent was not in a position of immediate danger.

Respondent argues that under the evidence the jury was warranted in finding that he was in immediate danger of injury sometime before appellant started his motor vehicle in motion because: respondent and Abram were struggling with Abrams half in and half out of the car; respondent

was trying to get between the car door and the car; he was trying to back up a little bit; Abrams still had ahold of his shirt and he had grabbed Abram; and therefore the jury was warranted in finding that at this point, respondent's safety was solely in the hands of appellant because respondent could no longer protect himself.

The difficulty with this line of argument is that it sounds of last clear chance rather than humanitarian negligence as that doctrine has developed in Missouri. This court, in *Gustafson v. Benda,* 661 S.W.2d 29, 32 (Mo.App.1982) pointed out that Missouri's "humanitarian doctrine" is an extension of the "last clear chance" doctrine; that common law last clear chance encompasses three basic situations; 1) a plaintiff in a position of actual peril and a defendant who knows of that peril, 2) a plaintiff in a position of actual peril and a defendant who in the exercise of the requisite degree of care should know of that peril, and 3) a plaintiff who is in a position of peril because of his inattentiveness or obliviousness and a defendant who knows or has reason to know of that obliviousness and knows of the plaintiff's position. Missouri's "humanitarian" negligence extends to the situation where a plaintiff is in a position of peril because of his inattentiveness or obliviousness and where a defendant's only negligence is his similar inattentiveness or obliviousness to plaintiff's peril. It has been the custom in Missouri to lump all three last clear chance situations and the humanitarian doctrine together under the label of "humanitarian negligence" without delineation of the difference existing between the various situations.

In each of the last clear chance situations the defendant may be liable, regardless of plaintiff's negligence in placing himself in the position of peril, if the defendant can in the exercise of the requisite degree of care and with safety to himself and others avoid injury to the plaintiff, i.e., if he has the "last clear chance" to avoid the accident. In the first two last clear chance situations,

the plaintiff has placed himself into a position of peril from which he can no longer extricate himself and his safety is solely dependent upon the care exercised by the defendant. In such a factual situation defendant's obligation under the law should not only be to take such evasive action as necessary to avoid injuring plaintiff but also to initially avoid taking any action which will cause injury to the plaintiff. These same principles are applicable to the third last clear chance situation when the defendant's actual knowledge of plaintiff's position of peril imposes a duty upon him to avoid engaging in any conduct which could result in injury to plaintiff because of plaintiff's obliviousness. None of these three situations are comparable to "humanitarian negligence" where by definition two oblivious parties have by their concurrent actions created the position of immediate danger of which neither has actual knowledge.

*Gustafson v. Benda,* supra, involved a collision between plaintiff's motorcycle and defendant's automobile as the motorcycle was in the act of passing the automobile as the parties approached a "T" intersection.

The defendant, while travelling 45 feet per second, turned toward the left no more than 10 feet from her original position to the point of collision. When defendant made her turn the plaintiff and the front of his motorcycle were even with the left rear fender or tire of her car. The left front fender of defendant's car struck plaintiff's right leg, and contact was made with the motorcycle approximately in its center.

This court agreed with the defendant's contention that the evidence was insufficient to establish that the defendant had sufficient time after plaintiff reached a point of immediate danger to have taken any action which would have prevented the accident where the parties agreed that the point of immediate danger was reached when the defendant's vehicle physically began its turn. This court said, l.c. 31, "In the present state of the law this is correct," and cited *McClanahan,* supra, as authority

for this statement. At p. 32 of the opinion the court said, "Plaintiff failed to make a submissible case under his submitted theory (humanitarian negligence) which was mandated by the law of this state as it presently stands and under that law we would be required to reverse outright the judgment in plaintiff's favor."

Because this result was considered unjust and was based upon decisions which had erroneously defined the zone of "imminent peril" or "immediate danger" to be applied to fact situations similar to the facts in the case before the court for decision, and because the court opined that under a proper definition of peril under the last chance clear chance doctrine the plaintiff made a submissible case, the case was transferred to the Supreme Court for reexamination of the law, and particularly *McClanahan,* supra.

On transfer the Supreme Court agreed that under the definition of "the point of imminent peril" or "the point of immediate danger" in *McClanahan,* supra, that point was reached when defendant's automobile physically began to turn left, and, upon the facts of the case, plaintiff could not recover. Rather than redefine the "point of imminent peril," however, the Supreme Court, 661 S.W.2d 11, 15[3] (Mo. banc, 1983), supplanted the doctrines of contributory negligence, last clear chance, and humanitarian negligence with a comprehensive system of comparative fault and reversed and remanded the case for a new trial based upon a determination of the comparative fault of the parties.

Respondent's argument that under the evidence the jury was warranted in finding that he was in immediate danger of injury sometime before appellant started up his motor vehicle is contrary to *McClanahan's* definition of "immediate danger" or "immediate peril." *McClanahan* specifically overruled a line of cases relied on by the

appellant in that case for the proposition that the doctrine of humanitarian negligence might be applied to situations wherein a plaintiff could have been in imminent peril only because of something defendant was about to do, and when the defendant did it, plaintiff's injury almost immediately ensued.[1] The court said, l.c. 706:

It was said in *Ridge v. Jones,* Div. No. 2, 535 Mo. 219, 71 S.W.2d 713, 715 [1934], that in some of the cases cited supra, the courts in approving submissions upon negligence under the humanitarian rule proceed upon the theory that "plaintiff was in a situation such that, while not in imminent peril, absent the negligent act of defendant in question, he was in imminent peril if such act was committed." If such were a sound theory, then it could be argued that all persons whose injuries were occasioned by the wrongful act or conduct of another were therefore in "imminent peril" within the meaning of the term under our humanitarian rule. We believe the humanitarian rule should not have been held to be applicable to the facts of the case cited in the preceding paragraph. It seems to us as the wrongful acts or conduct noted in the respective cases brought plaintiffs into imminent peril, yet the acts or conduct of the respective defendants either immediately caused the plaintiff's injuries, or the plaintiffs were injured as the result of defendants' acts or conduct so near to the time plaintiffs were in imminent peril that defendants were liable, if at all, not for negligence under the humanitarian rule but for their primary conduct amounting to negligence, or amounting to willfulness, wantonness or recklessness.

* * * and it has subsequently become the settled law that, in order for the humanitarian rule to be applicable to a plaintiff's case, there must be substantial evidence tending to show plaintiff was in

---

1. *Dalton v. Missouri K. & T. Ry. Co.,* 276 Mo. 663, 208 S.W. 828 (Mo.1918), and other cases

listed at 251 S.W.2d at 706.

"imminent peril"—the peril truly must be *imminent,* that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A bare possibility of injury is not sufficient to create the "position of peril," *imminent peril,* essential to the application of the humanitarian rule.

The *McClanahan* court then proceeded to overrule that line of cases wherein negligence under the humanitarian doctrine had been held to be submissible when supported by evidence tending to show that plaintiff was in a more or less dangerous position, but was not in "imminent peril" absent some wrongful act of the defendant, and wherein, although some wrongful act of defendant may have brought the plaintiff into imminent peril, there was insufficient time after plaintiff was in imminent peril for defendant to act with the means at hand to avoid the casualty.

It is clear that so long as appellant's El Camino "remained stopped the respondent was never in a position of "immediate danger" as that term is defined in *McClanahan.* According to the uncontradicted evidence the appellant pulled away from where he was stopped very suddenly and sped away from the scene. Once respondent came into a position of "immediate danger" there is no evidence that he could have stopped or slackened his speed, and thus have avoided injuring respondent once respondent came into a position of "immediate danger." Nor is there any evidence that a warning would have been sufficiently timely for him to extricate himself from the position of "immediate danger."

However, despite the respondent's failure to make a submissible case under the humanitarian negligence doctrine, following the precedent of *McClanahan* and *Benda,* we reverse and remand the case to the trial court for a new trial based upon a determination of the comparative fault of the parties.

STEWART and SNYDER, JJ., concur.