Ronald **EARLL** and Elizabeth **Earll**,
Plaintiffs-Appellants,

v.

**CONSOLIDATED ALUMINUM CORP.**
and Central Hardware,
Defendants-Respondents.

No. 50237.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 19, 1986.

John J. Frank, Stephen H. Ringkamp, Hullverson Hullverson & Frank, Inc., St. Louis, for plaintiffs-appellants.

William W. Evans, Gerre S. Langton, Evans & Dixon, St. Louis, for defendants-respondents.

CARL R. GAERTNER, Presiding Judge.

Plaintiffs' appeal from the judgment entered on the jury verdict in favor of defendants in a products liability case. We affirm.

Plaintiff Ronald Earll was injured on June 22, 1978, while painting the exterior of his residence. He testified that he was on a fully extended 16 foot aluminum extension ladder when the two sections of the ladder began to disengage. As the ladder began to fall, he jumped to the ground and was injured. He and his wife sued the manufacturer and the retailer of the ladder.

At trial, an expert witness testified for plaintiff that the ladder was defectively manufactured due to insufficient interlock between the flanges of the two sections of the ladder. The ladder was designed, he testified, for an interlock of .119 inches. By measuring the ladder after the accident he determined that there was an overlap of the flanges of only .027 inches. This was an insufficient overlap to prevent the weight of the users body from causing the upper or fly section of the ladder to slip out of engagement with the side rail of the lower or base section, a process described as "unzipping". Based upon his measurements, he concluded the ladder was defective when manufactured.

Two expert witnesses testifying for defendants disputed this testimony. After the accident, the ladder was bent or bowed to the left. Defendants' witnesses testified this could only have been caused by the force of plaintiff's body falling upon the ladder. This conclusion, they said, was corroborated by the fact that both sections of the ladder contained the same degree of bowing, proving that the two sections were still interlocked when the impact occurred. The bowing resulted in a distortion of the interlocking flanges, thus accounting for the measurement of an insufficient overlap. They concluded the ladder was not defective when manufactured. Other evidence will be developed in discussing plaintiff's points on appeal.

In their briefs and in oral argument before this court both parties have assumed the applicability of the doctrine of comparative fault to a case of strict liability in tort arising from the manufacture and sale of an allegedly defective product. Since the submission of this appeal the Supreme Court of Missouri has enunciated a contrary rule in *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986). We address the contentions asserted by plaintiffs in the light of this decision.

## I

Prior to the commencement of the trial, plaintiffs filed a motion in limine seeking an order prohibiting the introduction of evidence relating to six specified topics. For purposes of this appeal, only one of the six subjects plaintiff sought to exclude is pertinent.

Plaintiff's contributory negligence, when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence, and/or evidence of plaintiff's unobservant, inattentive, ignorant or awkward failure to discover or guard against a defect should not be admitted for the purpose of reducing the damages of plaintiff.

The trial court overruled the motion in limine.

On appeal plaintiffs argue that the trial court should have excluded evidence relating to "the method by which plaintiff set up the ladder against his house by using a brick and screw driver to level the base of the ladder on slanted ground" and testimony "as to the effect of plaintiff's position on the ladder, with hypothetical balancing problems caused by reaching and leaning...."

The ladder contained an express warning that it should be used only on the level ground. The land where the ladder was placed sloped sharply to the rear of the house. Plaintiff testified that to compensate for the uneven ground, he placed a brick under the right leg of the ladder and braced the brick with a screw driver driven into the ground. This evidence was introduced by plaintiffs. One of defendants' experts testified that from the position on the ladder described by plaintiff, he would be unable to see the surface he intended to paint without leaning awkwardly away from the ladder. No objection was made to this testimony. Defendants theorized that since the damage to the ladder demonstrated that it had not "unzipped" before it fell, the sole cause of the accident was the slipping of the leg of the ladder from the brick which would slope in conformity to the terrain upon which it was placed.

■ The evidence which plaintiffs now assert should have been excluded is not evidence of "failure to discover the defect in the product" as raised by their pre-trial motion in limine. On the contrary, plaintiffs elicited the testimony regarding the sloping terrain and raised no objection to the testimony about plaintiff's unbalanced position on the ladder." A party may not advance on appeal an objection to evidence different from the one presented to the trial court." *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 884 (Mo. banc 1985). *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99, 107 (Mo. banc 1985). Moreover, the evidence was properly admitted be-

cause it tended to refute plaintiffs' contention that the accident was caused by a defect in the ladder permitting it to become "unzipped." In support of their denial of the existence of any defect, defendants may advance a different explanation of the sole, rather than a contributing, cause of the accident, in this case, plaintiffs misuse of the product. *Lippard*, at 493; *Lewis v. Bucyrus-Erie, Inc.*, 622 S.W.2d 920, 927 (Mo. banc 1981). Plaintiffs' first point is without merit.

## II

Plaintiffs' final point on appeal relates to the withdrawal from the case of the issue of comparative fault. Plaintiffs' contention is predicated upon five sub-points involving various trial strategies and procedural maneuverings. Although the decision in *Lippard* is determinative of the basic issue of application of comparative fault in a products liability case, we nevertheless address the sub-points in order to demonstrate that no prejudicial error warranting reversal occurred during the trial.

Plaintiffs' second amended petition sought recovery under strict liability in tort, negligence and breach of warranty. In their answers each defendant alleged that plaintiffs' damages "were caused by the negligence or fault or assumption of the risk of plaintiff Ronald L. Earll directly contributing thereto. This defendant invokes the doctrine of comparative negligence or fault." Immediately before trial plaintiffs' dismissed without prejudice the negligence and breach of warranty counts and filed the aforementioned motion in limine. At the conclusion of the evidence plaintiffs offered a set of instructions and verdict forms directing the jury to assess appropriate percentages of fault to the parties and to determine plaintiffs' total damages, disregarding any fault on the part of plaintiff. Defendants' attorney chose not to submit any verdict directing instruction on an affirmative defense of comparative fault or contributory negligence. The trial judge, expressing his "feeling" that defendants' had "the right to abandon the comparative negligence instruction," rejected the comparative fault package of instructions and verdict forms tendered by plaintiffs. Plaintiffs then submitted instructions and verdict forms from the pre-*Gustafson* era, MAI 25.04, MAI 4.01, MAI 10.04, which the court gave. Plaintiffs' also offered, but the court rejected, a withdrawal instruction in the following form:

All evidence and any inferences based on such evidence and any issue in any way relating to misuse, abnormal or improper use of a ladder by plaintiff Ronald Earll or relating to any fault on the part of the plaintiff Ronald Earll are withdrawn from the case and you are not to consider any such evidence, inferences, or issues in arriving at your verdict.

Plaintiffs contend the trial court erred in permitting defendants to unilaterally withdraw the issue of comparative fault from the jury's consideration, in refusing to give their offered instructions and verdict forms based on comparative fault, in refusing their offered withdrawal instruction and in permitting defendants to argue fault or misuse on the part of plaintiff.

## III

The effect of abandonment of a pleaded affirmative defense was considered by the Supreme Court in *Shepard v. Harris*, 329 S.W.2d 1, 7 (Mo. banc 1959).

We are of the opinion and therefore hold that when a defendant fails to submit the affirmative defense of contributory negligence he has thereby abandoned that defense and it no longer remains an issue in the case for any purpose, and, consequently, a plaintiff's verdict directing instruction which ignores such abandoned issue of contributory negligence is not erroneous.

Does a similar rule apply to a defendant's refusal to submit an affirmative defense instruction based on comparative fault? Analysis of the conceptual and procedural distinctions between the doctrines of contributory negligence and comparative fault leads us to conclude this question must be answered in the negative.

■ With the publication of the Supreme Court opinion in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), the doctrine of contributory negligence was supplanted by a comprehensive system of comparative fault. This major change in the tort law of Missouri was made in recognition of the reality that "there must be a better way to obtain fairness and justice than to continue to indulge in fictions in the application of a bundle of antiquated and fairly inflexible rules of tort law." *Id.* at 13. Referring to the "inevitability of the evolution from contributory negligence through the doctrine of last clear chance to some form of comparative negligence or fault ..." the court adopted the conclusion of a number of commentators [1] that earlier solutions seeking to alleviate the harshness of contributory negligence had resulted in illogical inequities.

It is still no more reasonable to charge the defendant with the plaintiff's share of the consequences of his fault than to charge the plaintiff with the defendants; and it is no better policy to relieve the negligent plaintiff of all responsibility for his injury than it is to relieve the negligent defendant. The whole floundering, haphazard, make shift device operates in favor of some plaintiffs by inflicting obvious injustice upon some defendants; but it leaves untouched the greater number of contributory negligence cases in which the necessary time interval or element of discovery does not appear and the last clear chance cannot apply. *Id.*, quoting from Prosser, *Comparative Negligence*, 51 Mich.L.Rev. 465, 474 (1953).

Thus it can be seen that the concepts underlying the adoption of the doctrine of comparative fault are directed toward the elimination of the inequities inherent in legal doctrines which irrationally imposed total responsibility upon one party for the consequences of the conduct of both parties. Accordingly, where there is evidence that the conduct of both parties combined and contributed to cause damage, the fact finder should not be precluded from comparing the respective contributions toward such causation made by each. Because the benefits flowing from such an approach are mutual, its application should not be determined by any one party. Rather, the determinative factor is the evidence. "All instructions ... shall be given or refused by the court according to the law and the evidence in the case." Rule 70.02(a).

Procedural changes adopted for purposes of submitting the issues in a comparative fault case also demonstrate the inapplicability of the *Shepard v. Harris* rule that once abandoned, contributory negligence no longer remains an issue for any purpose. Before *Gustafson*, abandonment by a defendant of his contributory negligence defense had no effect upon the manner in which the jury was instructed to reach a decision. The jury was directed to find in favor of plaintiff or to find in favor of defendant whether the affirmative defense was submitted or withdrawn. Our brief experience in the realm of comparative fault has demonstrated the inadequacy of the simplistic approach of finding in favor of one and against the other. *See Vardimon v. Appelton*, 684 S.W.2d 65 (Mo.App. 1984); *Scott v. Davis*, 684 S.W.2d 872 (Mo. App.1984); *Roux v. City of St. Louis*, 690 S.W.2d 448 (Mo.App.1985). Jurors found it illogical to find in favor of a plaintiff who was much more at fault than the defendant. The Supreme Court has now approved instructions and verdict forms for use in comparative fault cases which do not refer to or require a finding in favor of or against any party. MAI 37.01–37.07 (1986 new). The adoption of this new approach was necessary in order to insure that juries would not mistakenly deprive any litigant of the "fairness and justice [which] can best be achieved through a broader application of [the] doctrine" of comparative fault. *Gustafson* at 15. Reluctance to find in favor of a plaintiff more than 50% at fault

1. James, *Last Clear Chance: A Transitional Doctrine*, 47 Yale L.J. 704 (1938); Prosser, *Comparative Negligence*, 51 Mich.L.Rev. 465 (1953); H. Woods, *The Negligence Case: Comparative Fault*, 14–15 (1978).

would, in effect, alter the "pure" comparative fault system adopted in *Gustafson.* The same inequity would result if a plaintiff, shown by the evidence to have contributed to the causation of his own injury, is forced by the unilateral decision of the defendant to have his case submitted to the jury on an "all or nothing at all" basis. *See Grisoff v. Nicoletta,* 107 A.D.2d 1047, 486 N.Y.S.2d 579 (4 Dept.1985).

Therefore, for conceptual and procedural reasons alike, we believe that, in a negligence case, where there is evidence from which a jury could find that plaintiff's conduct was a contributing cause of his damages, unless the parties agree otherwise, the case should be submitted to the jury under the instructions and verdict forms approved by the Supreme Court for use in comparative fault cases regardless of whether the defendant submits an affirmative defense instruction or not.

### IV

■ Although we disagree with the conclusion of the trial court that defendants could unilaterally withdraw comparative fault from the case, in view of the *Lippard* decision by the Supreme Court and under the facts and circumstances of this case, the jury was properly instructed. The negligence of plaintiff Ronald Earll was for the consideration of the jury only insofar as such negligence may have been the sole cause of the casualty. "If a defective product is a legal cause of injury, then even a negligent plaintiff should be able to recover" and his negligence "should neither defeat nor diminish his recovery." *Lippard,* at ——. This rule presumes the existence of a defective condition making the product unreasonably dangerous. However, evidence of a plaintiff's negligence is admissible "in support of arguments that the product is not unreasonably dangerous, or that the alleged defects in a product did not cause the injury...." *Id.* Thus, *Lippard* mandates that a products liability case be submitted to the jury on an "all or nothing at all basis." The pre-*Gustafson* law and procedure continue to apply to such cases. If the jury finds a product defect to be a cause of the casualty, then plaintiff's contributory negligence becomes irrelevant. His contributory fault, voluntarily and unreasonably exposing himself to the known danger created by the defect, totally defeats his claim. Likewise, he may not recover if the jury believes his carelessness, and not a product defect, was the sole proximate cause of his injury.

The instant case was submitted to the jury under instructions patterned upon modifications of MAI 24.04 and 19.01. The jury was directed to find in favor of plaintiffs if they believed 1) the defendants manufactured or sold the ladder, 2) it was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, 3) that it was used in a manner reasonably anticipated and 4) that the defective condition either directly caused or directly contributed to cause plaintiffs' damages. Under the rule enunciated in *Lippard,* the instructions properly submitted the elements essential to plaintiffs' recovery. The verdicts in favor of defendants show that the jury must necessarily have concluded that plaintiffs failed to prove at least one of these four propositions. It is noteworthy that the only instructions directing a verdict in favor of defendants were instructions conversing elements two, three and four of plaintiffs' verdict-directing instructions. The verdict responds to these instructions. *See Barnes v. Tools and Machinery Builders, Inc.,* 714 S.W.2d 534 (Mo.banc 1986).

Moreover, in their verdict-directing instructions plaintiffs utilized the first alternate of MAI 19.01, *Verdict-Directing Modification—Joint Tortfeasors.* By the use of this first alternate of MAI 19.01, the jury was directed to find in favor of plaintiffs if they believed the ladder was defective and that the defect merely contributed to cause plaintiffs' damages. The verdict in favor of defendants, therefore, can only be viewed as a determination by the jury that the ladder was not defective when manufactured or sold.

### V

■ For the reasons stated above, we reject plaintiffs' contention that the trial

court erred in refusing to give the proposed withdrawal instruction. This instruction went too far in withdrawing from consideration all evidence relating to misuse, abnormal or improper use of the ladder or evidence of fault on the part of Ronald Earll. As demonstrated in the first point of this opinion, such evidence was properly admitted for the consideration of the jury in determining the existence of a defect and the causation of the accident. MAI 34.01 [1978 Revision] *Withdrawal Instructions-General Comment* provides:

> The court may properly give a withdrawal instruction when it has received evidence upon an issue which is later abandoned either by choice or by reason of inadequate proof for final submission to the jury. The instruction to be given is that the issue is no longer open for the jury's consideration.

> Evidence, rather than an entire issue, may also properly be withdrawn by instruction. In the event evidence, rather than an issue, is sought to be withdrawn from the jury's consideration, care must be taken that such evidence does not also concern an issue still before the jury.

It would be a misdirection to instruct the jury not to consider the evidence of plaintiff's conduct as a possible sole cause of the accident.

### VI

Finally, plaintiffs argue the trial court erred in permitting defendants to argue facts and inferences as fault or misuse on the part of plaintiff. The gist of the argument of defendants' attorney was that plaintiffs had failed to sustain their burden of proving the existence of a defective condition in the ladder prior to the accident. Comparatively brief mention of plaintiff's conduct in using the ladder on sloping terrain was made, but plaintiffs' attorney had previously introduced the subject of plaintiff's conduct in his opening argument: "everybody agrees that he [plaintiff] did everything he could to make that ladder safe." Moreover, no objection was made by plaintiffs during this part of defendants' argument. *Lawton v. Jewish Hospital,* 679 S.W.2d 370, 372 (Mo.App.1983). Read in its entirety, defendants' argument was consistent with the contention they had advanced throughout the trial—that the ladder could not have "unzipped" before the accident and that the sole cause of plaintiff's fall was his own misuse of the ladder. Presented in this context, rather than as a factor contributing with the defect toward the cause of the accident, the argument was not improper. As stated by Judge Rendlen in *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d at 927,

> Though it could go to a question of contributory fault as well, the comment had a reasonable connection with Lewis' use of the crane by riding the load, and whether he was using the crane in a manner reasonably anticipated, an element of plaintiffs' case. *Rogers v. Toro Manufacturing Co.,* 522 S.W.2d 632, 637 (Mo.App.1975); MAI 25.04. The fact that an argument may touch upon two issues, one legitimately in the case and the other not, does not per se require its rejection.

We find no prejudicial error warranting reversal. Accordingly, the judgment is affirmed.

SMITH and SNYDER, JJ., concur.