Timothy HENDERSON,
Plaintiff-Respondent,

v.

TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS, a Corp.,
Defendant-Appellant.

No. 52050.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 8, 1987.

Robert C. Ely, St. Louis, for defendant-appellant.

Donald S. Singer, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This is a personal injury action for damages where the plaintiff's foot was traumatically amputated by one of defendant's trains. This appeal stems from a jury verdict rendered in May 1986 in favor of the plaintiff in the amount of $264,000.

This case has previously been before our court. *Henderson, et al., v. Terminal Railroad Association of St. Louis*, 659 S.W.2d 227 (Mo.App.1983). We will incorporate, without the use of quotation marks, pertinent portions of the statement of facts contained in that opinion which reappeared on retrial.

We find that the jury could determine the facts to be as follows: On a clear afternoon, Timothy [Henderson] and Harold Mackintosh (Harold), following their release from school, took a shortcut through Penrose Park, a large recreational facility with picnic areas, baseball diamonds and a banked bicycle track. The right of way, consisting of two sets of railroad tracks, including crossover switching devices, is located on an east-west axis. There is a three percent uphill grade and a gradual curvature of the tracks in this area.

Two pedestrian footpaths in Penrose Park lead to Terminal's right of way. Fifty to sixty school children a day take a shortcut from Scullin School, which is south of the park, across Terminal's right of way in Penrose Park to reach their homes located in an area north of the park. Timothy attended Scullin School and his home is north of Penrose Park.

Terminal's train, consisting of two locomotives and forty eight fully loaded freight cars, was traveling westbound on the uphill grade of the right of way to the General Motors plant, at approximately two miles per hour. The train was equipped with air brakes which are operable from the two locomotives and the caboose in a service and emergency application.

Timothy was eleven years old at the time of the injury, but functioned mentally at a five to six year old level and was in a slow learner class at Scullin School. Timothy had been instructed about the danger of moving automobiles, but had not been instructed, either at home or at school, about the danger of moving trains.

J.T. Uelhof (Uelhof), Terminal's employee, was the rear man on the train, stationed on the caboose. It was his job to line up the crossover switches and to protect the rear end of the train.

Uelhof, standing on the caboose at the rear of the train, first observed Timothy and Harold running east, along the south side of the train, ten car lengths away (a minimum of five hundred feet). At trial, describing what he observed, Uelhof stated: "... I saw these two boys further up alongside of the train running alongside of the train, presumably to hop on and off, which they tried at various times." Uelhof estimated that he watched the boys for two minutes before he hopped off the train to line up the switches. During the switching maneuver he lost sight of the boys, but three or four minutes later saw them on the north side of the train, about five car lengths away, running west between the main lines. Uelhof testified that he thought they climbed through the train to reach the north side while the train was going through the crossover. Uelhof again lost sight of the boys while he did additional switching, which he estimated took a minute and a half. After completing his switching tasks, Uelhof saw Harold running toward the caboose telling him that his friend, Timothy, was hurt.

As the train continued westbound, Uelhof saw Timothy sitting on the ground between the main lines. Timothy was holding his left leg; blood was visible on the bottom of his left foot.

At trial, Uelhof testified that he did nothing to warn the boys because "[t]hey were too far away." Further, Uelhof admitted that company rules provided that he was to warn children and get them off the train. He estimated that his walking speed was three to four miles per hour.

The caboose does not contain any communication equipment to the locomotive or otherwise. Uelhof remained on the train without offering emergency assistance. Two minutes later, Uelhof hopped off the train and called for assistance at a railroad phone box, and then immediately re-hopped the caboose. The train did not stop until it reached its destination, the General Motors plant. As a result Timothy was injured.

Neither party pleaded comparative fault. Respondent submitted his case under the humanitarian doctrine and the appellant pled contributory negligence and assumption of risk. At the conclusion of the appellant's case the following took place at the instruction conference:

THE COURT: So the record—So we can have the record clear on this, have there been any comparative fault instructions offered by the defendant?

[DEFENDANT'S COUNSEL]: No, Sir. They would not be offered by the defendant. However, I have a—an instruction, which I would offer in the event that the Court did submit comparative fault. In other words, in place of Instruction No. 7, I would submit the instruction which deals with comparative fault.

THE COURT: Yeah. But for the record, haven't you informed the Court that you are not submitting the issue of contributory negligence or contributory fault of the plaintiff?

[DEFENDANT'S COUNSEL]: That is correct.

THE COURT: All right. And so the record should reflect that the Court was informed last evening that the defendant does not intend to submit the issue of contributory fault or contributory negligence of the plaintiff. And, therefore, it's contributory fault is no longer an issue in the case. And neither the plaintiffs nor the defendants requested a sub-

mission under comparative fault. And the case is being submitted under the standard M.A.I. instruction without regard to comparative fault. Has plaintiff requested any comparative fault instructions?

[PLAINTIFF'S COUNSEL]: No, I haven't, Your Honor.... I'd ask now, Mr. Ely, are you submitting on comparative fault?

[DEFENDANT'S COUNSEL]: I'm not submitting any instruction that submits fault of the plaintiff.

[DEFENDANT'S COUNSEL]: I am protecting my record on this as to whether the Court is required to submit comparative fault as in accordance with whatever direction is required in case of Gustafson vs, Bendison [sic].

The first of three points offered by appellant on appeal is that the trial court was required to submit a comparative fault instruction although none was offered by appellant or respondent, and that failure of the court to submit such an instruction was error. The respondent contends that the appellant waived its right to a submission of any comparative fault instructions when it failed to offer to the court any comparative fault instructions. We agree.

In 1983, the Missouri Supreme Court supplanted the doctrines of contributory negligence, last clear chance, and humanitarian negligence with a comprehensive system of comparative fault. *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983). The court recognized that while waiting for the legislature to enact a statutory scheme of comparative fault, the opinions of the court to date had left the practicing bar with "little guidance as to the basis, extent and consequences of the doctrine of comparative fault." *Id.* at 15. The lack of guidelines and resultant confusion among the members of the bar prompted the court to adopt, by judicial decision, the doctrine of comparative fault. In its search for the "simplest and most clear, concise and direct method for adopting a comprehensive system of comparative fault" *Id.* the court adopted the Uniform Comparative Fault Act (UCFA) Sections

1–6, 12 U.L.A.Supp. 35–45 (1983). *Id.* The UCFA was appended to the opinion and the court directed that the pure form [1] of comparative fault, in accordance with the UCFA, shall be applied to future cases "insofar as possible." *Id.* The qualifying phrase "insofar as possible" has again left the practicing bar with few guidelines regarding the rules of pleading and trial practice related to comparative fault. The UCFA is silent as to the issue of whether the court is required to submit a comparative fault instruction when none is offered or requested by either party. As to when the jury is to be instructed on the relative fault of the claimant, the UCFA Section 2 states simply:

> In all actions involving fault of more than one party to the action ... the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories [2] ... indicating: ... (2) the percentage of the total of all of the parties to each claim.

*Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491, 492–493 (Mo.banc 1986) stated that "[i]t was not the purpose of *Gustafson* to enact that model act [the UCFA] as a virtual statute of the state of Missouri, to establish substantive principles controlling cases not then before the Court. Much less was there any purpose of giving special authority to the annotations and commissioners' comments." In *Lippard*

the court refused to change the Missouri common law regarding the role of the claimant's contributory fault in products liability cases despite the seemingly mandatory language of Section 1 of the UCFA [3] and stated "if there is dissatisfaction with our conclusion, the state and national legislatures may be addressed." *Id.* at 494. One commentator has suggested that the phrase "insofar as possible" in *Gustafson*, when read in light of the *Lippard* decision indicates that the common law of Missouri will control over conflicting provisions of the UCFA unless sufficient reasons are given for why it should not. Missouri Comparative Fault Treatise-Theory and Practice, p. 68B (UMKC/CLE, 1986). Since Missouri, unlike a small number of jurisdictions,[4] has no statute authorizing a compulsory jury instruction on comparative fault in tort cases, we will apply the common law of Missouri in resolving this issue.

Appellant, in his brief and on oral argument relies principally on *Earll v. Consolidated Aluminum Corp.*, 714 S.W.2d 932 (Mo.App.1986) to support his contention. In that case the court stated,

> "where there is evidence from which a jury could find that plaintiff's conduct was a contributing cause of his damages, unless the parties agree otherwise, the case should be submitted to the jury under the instructions and verdict forms approved by the Supreme Court for use

---

**1.** Under "pure" comparative negligence, in an action based on fault, the amount awarded as compensatory damages is to be reduced in proportion to the contributory fault of the claimant. *Fletcher v. City of Independence*, 708 S.W.2d 158, 170 (Mo.App.1986). Fault encompasses any "acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others." *Id.*

**2.** The Supreme Court of Missouri ordered comparative fault instructions to be used rather than special interrogatories. *See* 701–702 S.W.2d XXVII–XLI; MAI3d ed. (1981 & 1987 Supp.Chapter 37).

**3.** Section 1 of the UCFA reads as follows:

(a) In an *action based on fault* seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionally the amount awarded as compensatory damages

for an injury attributable to the claimant's contributory fault, but does not bar recovery. *This rule applies whether or not under prior law the claimant's contributory fault constituted a defense or was disregarded under applicable legal doctrines*, such as last clear chance.

(b) "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, *or that subject a person to strict tort liability*. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault. (Emphasis added).

**4.** Solovy, Comparative Negligence as an Affirmative Defense, 70 Iowa L.Rev. 693, note 110 (1985).

in comparative fault cases regardless of whether the defendant submits an affirmative defense instruction or not."

At first glance, the above language would seem to bolster the appellant's position. However, *Earll* is factually distinguishable from this case.

In *Earll* the plaintiff brought an action based on strict products liability for injuries he sustained while using an allegedly defective ladder manufactured by the defendant. Both plaintiff and defendant had assumed that comparative fault was applicable. Plaintiff, at the close of the evidence, submitted comparative fault instructions. When the defendant chose not to do so the judge rejected plaintiff's tendered comparative fault instruction along with plaintiff's request to withdraw the issue of plaintiff's fault from jury consideration. On appeal the plaintiff argued that the court erred when it did not submit comparative fault instructions but allowed defendant to argue fault on the part of plaintiff. While the appeal was pending, the *Lippard* decision, which held that comparative fault was inapplicable to strict products liability cases, was handed down thus resolving that issue on appeal and rendering a large portion of the *Earll* decision, including the above quoted passage, dicta. In the *Lippard* opinion the court found that refusal of the defendant to submit an affirmative defense instruction regarding comparative fault did not abandon that issue. In reaching that conclusion the court, focusing on the inequity that comparative fault was designed to prevent, stated that since "the benefits flowing from such an approach are mutual, its application should not be determined by any one party." *Id.* at 936. Further, the court recognized the inequity that would result if a plaintiff was forced, by the unilateral decision of the defendant, to have his case submitted to the jury on an all or nothing basis. *Id.* at 937. Logically it would appear, then, that the dicta in *Earll* is directed at the situation where one party, by his unilateral action, seeks to deprive the other litigant of the opportunity to invoke the doctrine of comparative fault. That situation is not presented in this case. Here, neither appellant or respondent chose to submit comparative fault instructions. Respondent, upon learning that his opponent was not going to submit such an instruction, took no exception to appellant's decision. Respondent then chose to submit his case under the humanitarian negligence doctrine and appellant tendered a converse instruction even though appellant's attorney had in hand a comparative fault instruction. No argument or objection by either party was made. Since we find no unilateral act on the part of one litigant that deprived the other of any theory of recovery he had advanced, including comparative fault, *Earll* is inapplicable.

Perhaps, more instructive in the resolution of this case is *Hicks v. Smith*, 696 S.W.2d 855 (Mo.App.1985). In that litigation the plaintiff brought an action for damages she suffered while a passenger in a car that collided with the defendant's truck at an intersection. Both drivers claimed to have a green light in their favor. Neither plaintiff or defendant in any way raised the issue of comparative fault in their pleadings or at trial. The plaintiff submitted her case with instructions to find for plaintiff if the jury found that the defendant violated the traffic signal. The only instruction submitted by the defendant was a true converse. The jury found for the defendant. On appeal the plaintiff argued that the court should have instructed the jury on comparative fault relying on *Gustafson*. The court disagreed. Since the issue of comparative fault was neither raised in the pleadings or at trial; nor was any request for an apportionment instruction made, the court, citing *Sullivan v. KSD/KSD-TV*, 661 S.W.2d 49 (Mo.App. 1983) stated that "[a] party will not be heard to complain of the failure to give an instruction not requested in the trial court." *Hicks*, 696 S.W.2d at 856.

*Hicks* is in accord with the Missouri Rules of Civil Procedure and with case law regarding the relative duties of the court and the trial attorney in preparing and presenting jury instructions. V.A.M.R. 70.-01 states:

... Before the case is submitted the court shall call a conference of counsel to consider instructions. Any party may, before the case is submitted, request the court to instruct the jury in writing on the law applicable to the issues. The court may give instructions on its own motion. All instructions shall be submitted in writing and shall be given or refused by the court according to the law and the evidence in the case.

Accordingly, it is the duty of the attorney to prepare and submit instructions and request that they be given. There is no duty on the part of the trial court to prepare instructions or to offer to correct an instruction offered by a party. *Sheinbein v. First Boston Corp.*, 670 S.W.2d 872 (Mo. App.1984). A party is required to tender instructions that submit his claim or affirmative defense, *Young v. Davis*, 726 S.W.2d 836, 838 (Mo.App.1987) and cannot complain of error in the failure of the court to give an instruction not requested. *Sullivan*, 661 S.W.2d at 51.

"It is the trial court's responsibility to give the instruction. But, since the decision of *Dorman v. East St. Louis Ry. Co.*, 75 S.W.2d 854 (Mo.1934) it has been your job, the task of the trial advocate, to aid the court by preparing and tendering to the judge all of the correct written instructions you desire him to give. If the court doesn't give an instruction to which your client is entitled and you have not prepared it correctly, and asked that it be given, its your fault and not the court's." [5]

Here it seems the appellant opted not to submit its theory of comparative fault. Under the facts of this case the appellant chose not to take the burden of pleading and proving an affirmative comparative fault defense. As a tactical matter, the appellant decided to compel the jury to make an all-or-nothing determination. This supposition is supported by the submission of the appellant's own "Affirmative Converse Instruction" in which it advised the

jury "Your verdict must be for defendant unless you believe that defendant was negligent." This is further supported by the patent declaration of the appellant that it was not going to instruct on the fault of the plaintiff.

The potential for "sandbagging" under the facts of this case is present. As mentioned earlier, it seems obvious that the appellant opted for an all or nothing judgment. He declined to submit any instruction considering the fault of the plaintiff and instead placed the burden of deciding whether or not to instruct on comparative fault on the court. In situations such as this a defendant can strategically place himself in a no lose situation. If the court does not instruct on comparative fault and the verdict is in defendant's favor, his strategy has paid off. If the verdict is not in his favor, he can allege error in the trial court's decision, this affording him a "second bite of the apple." However, though the potential for sandbagging is present, we recognize the trial court's observation that it did not believe that the appellant's attorney intended any sandbagging. For reasons stated above we find that by failing to submit an instruction on comparative fault to the court by appellant, the appellant waived the issue. Accordingly, appellant's first point is denied.

■ Appellant's second contention relates to the applicability of the humanitarian doctrine in this case. Appellant argues that the submission of instruction No. 6, based on M.A.I. 17.15, was error because the humanitarian doctrine has been supplanted by comparative negligence. *Gustafson*, 661 S.W.2d at 16.

Instruction No. 6 as submitted to the jury read as follows:

Your verdict must be for plaintiff Timothy Henderson, whether or not Plaintiff was negligent, if you believe:

First, plaintiff was in a position of immediate danger of being injured and was injured, and

---

5. Milholland, Why and How to Instruct the Jury, Journal of Missouri Bar (1980) *reprinted* *in* MAI3d ed. CXXX (1980).

**600**

Second, defendant's employees knew or by using ordinary care could have known of such position of immediate danger, and

Third, at the moment when defendant's employees first knew or could have known of such position of immediate danger, defendant still had enough time so that by using the means available to its employees and with reasonable safety to its employees and all others and by using ordinary care, it could have avoided injury to said plaintiff by issuing a warning or stopping, and

Fourth, defendant's employees negligently failed to so issue a warning or stop, and

Fifth, plaintiff's injury directly resulted therefrom.

When the submissibility to instruct the jury on comparative fault is abandoned or waived, the trial judge must then instruct the jury using general negligence principles. As stated earlier, the phrase "insofar as possible" in *Gustafson*, when read in light of *Lippard* indicates that the common law of Missouri will control when it is in direct conflict with the UCFA or when UCFA is inapplicable. By waiving his theory of comparative fault, appellant accedes to the application of common law. Plaintiff chose to submit the case under the humanitarian negligence doctrine and appellant acquiesced to this submission by tendering a converse instruction. We can find no error on the part of the trial judge in submitting the case to the jury on humanitarian negligence principles.

■ Appellant finally contends that even if M.A.I. 17.15 is considered to still be a proper submission of negligence of defendant, then the case of *McClanahan v. St. Louis Public Service Co.*, 363 Mo. 500, 251 S.W.2d 704 (1952) is still a correct definition of the law and would require the case to be reversed. We cannot agree with appellant's contention. The "law of the case" was established in our previous opinion on this matter and the trial court was bound by the former declaration of the law, *Choate v. State Department of Public Health & Wel.*, 296 S.W.2d 189, 194 (Mo. App.1956).

Judgment of the trial court affirmed.

CRANDALL and KAROHL, JJ., concur.