**Lonzo STEWART, Movant,**

v.

**STATE of Missouri, Respondent.**

**No. 55558.**

Missouri Court of Appeals,
Eastern District,
Division One.

May 30, 1989.

Carl D. Kinsky, St. Louis, for movant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Presiding Judge.

Movant, Lonzo Stewart, appeals from the denial of his Rule 29.15 motion without an evidentiary hearing. We reverse and remand.

Movant was convicted, after a jury trial, of murder in the second degree and sentenced to imprisonment for 20 years. That conviction was affirmed on direct appeal. *State v. Stewart*, 752 S.W.2d 359 (Mo.App. 1988). At trial, a State's witness testified that movant shot the victim once and, after the victim fell, movant fired five more shots into his head. Movant admitted the shooting but testified that he acted in self-defense.

Movant's brother, Marvin, testified on behalf of his brother. The essence of Marvin's testimony on direct examination was that he was present at the shooting and that movant acted in self-defense. On cross-examination, Marvin was asked whether he had told Detective Poelling that he was at a party and not present at the shooting. Marvin denied making the statement. The State then called Poelling in rebuttal. He testified that when he spoke to Marvin, he and Marvin were the only ones present. Poelling testified that when he asked Marvin whether he had been present at the shooting, Marvin replied that he was not there but had been at a party.

Movant alleges the motion court erred in denying movant's Rule 29.15 motion with-

out an evidentiary hearing because his motion contained facts not refuted by the record which could entitle movant to relief. In his motion, movant claims that he instructed trial counsel to call movant's sister, Laura, as a surrebuttal witness. He claims he told his trial attorney that Laura would rebut Officer Poelling's testimony by testifying that she was present when Poelling questioned Marvin and that Marvin did not tell Poelling that he was at a party at the time of the shooting. Movant contends Laura's testimony would have helped rehabilitate Marvin's credibility as a defense witness, after Poelling's alleged false testimony. Movant therefore claims he was denied effective assistance of counsel.

Movant requested an evidentiary hearing. He stated in his amended Rule 29.15 motion that, in addition to his own testimony, he intended to call his trial attorney and Laura Stewart as witnesses. In denying the motion, the court ruled that whoever was present with Marvin at the time Poelling questioned him was a collateral issue "in that Marvin Stewart stated [to] whoever was present that he was not with his brother nor did he know what his brother had done on November 15, 1986, the date of the alleged murder. Counsel is not required to pursue collateral issues which do not support any defense."

Whether Laura was present at Poelling's interrogation may indeed be a collateral issue, as the motion court found. Laura's statement that she was present, however, was not her only purported testimony. According to movant, she would have also stated that Poelling falsely testified that Marvin told him that he was not with movant at the time of the shooting.

Subject to certain limited exceptions, *see* *Williams v. State*, 744 S.W.2d 814, 817 (Mo.App.1987), the motion court is required to issue findings of fact and conclusions of law on all of the issues presented. *See* *Feemster v. State*, 709 S.W.2d 172, 173 (Mo.App.1986); Rule 29.15(i). The requirements of Rule 29.15(i) are not a mere formality. Those findings and conclusions must be made with sufficient specificity to allow for meaningful review on appeal. *Moore v. State*, 736 S.W.2d 593, 594 (Mo. App.1987).

The motion court's findings failed to fully address movant's contention. In particular, the court failed to address movant's allegation that Laura would have testified on surrebuttal that Marvin never told Poelling that he was not with movant at the time of the shooting. The court's ruling does not reveal whether the court even considered this allegation. *See Id.*

In *O'Neal v. State*, 766 S.W.2d 91 (Mo. banc 1989), the Missouri Supreme Court reiterated the rules relating to appellate review of post-conviction proceedings announced in *Sanders v. State*, 738 S.W.2d 856 (Mo. banc 1987). Quoting *Sanders*, the Court said:

The Sixth Amendment guarantees the right to effective assistance of counsel. And, while this allegation is commonly found in proceedings attacking both guilty pleas and trial convictions, a movant is faced with what has often been called a 'heavy burden.' *Jones v. State*, 598 S.W.2d 595, 597 (Mo.App.1980). Not only must the movant prove his allegation by a preponderance of the evidence, but the 'heavier burden' arises from a presumption that counsel is competent. *See Strickland v. Washington*, 466 U.S. 668, 689 [104 S.Ct. 2052, 2065, 80 L.Ed.2d 674] (1984); *Seales v. State*, 580 S.W.2d 733, 735 (Mo. banc 1979). In determining the issue of ineffective assistance of counsel, the trial court is free to believe or disbelieve evidence—contradicted or undisputed. *See Jones*, 598 S.W.2d at 597. And, appellate review of the trial court's decision in ruling a Rule 27.26 proceeding is expressly 'limited to a determination of whether the findings, conclusions, and judgment of the trial court are *clearly erroneous.*' (Emphasis added). Rule 27.26(j); *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984). Such findings and conclusions are deemed clearly erroneous only if, after a review of the entire record, the appellate court is left with the 'definite and firm impression that a mistake has been made.'

*Stokes v. State,* 688 S.W.2d 19, 21 (Mo. App.1985).

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland,* 466 U.S. at 687 [104 S.Ct. at 2064]; *Seales,* 580 S.W.2d at 736. A criminal defendant must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, courts are not required to consider both prongs; if a defendant fails to satisfy one prong, the court need not consider the other. And, a court need not determine the performance component before examining for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so. *Strickland,* 466 U.S. at 697 [104 S.Ct. at 2069] (emphasis added).

Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Unlike *Sanders* and *O'Neal,* there was no evidentiary hearing in this case. Further, the findings of the motion court are clearly erroneous because they failed to address movant's contention. The record on appeal does not refute movant's allegation. The alleged testimony of Laura, considered in a light most favorable to movant, could have the reasonable probability of rehabilitating Marvin's credibility. Clearly, Marvin's credibility was material to movant's self-defense theory at trial. *See State v. Holly,* 697 S.W.2d 250, 253 (Mo. App.1985). Issues such as the credibility of the witnesses who might testify at the motion hearing, trial strategy, and the determination of lack of prejudice cannot conclusively be resolved against movant based only upon the motion and the files and records of this case. *See* Rule 29.15(g).

The judgment of the trial court is reversed and this case is remanded with directions to the motion court to grant an evidentiary hearing. In view of our holding, we do not address movant's remaining point relating to procedural deficiencies in the motion court.

CRIST, J., concurs in result only.

REINHARD, J., dissents in separate opinion.

REINHARD, Judge, dissenting.

I respectfully dissent. I have no quarrel with the majority's determination that the motion court's findings failed to fully cover movant's allegations; however, after reviewing the entire record, I have determined that movant suffered no prejudice. I would therefore affirm the motion court's denial, without an evidentiary hearing, of movant's Rule 29.15 motion.

To prevail on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A movant "must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim." *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987) (emphasis in original).

A motion court and this court may proceed directly to the issue of prejudice without first determining whether counsel's performance was deficient. *Id., Roberts v. State,* 764 S.W.2d 688, 689 (Mo.App.1988); *Cook v. State,* 752 S.W.2d 483, 485 (Mo. App.1988).

A movant must show that the alleged error had an adverse effect on the defense, that is, any deficiencies must be prejudicial. The fact that an error by counsel might have had some conceivable effect on the outcome is not sufficient. Rather, a movant, when challenging a conviction, must show there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt. In determining whether a rea-

sonable probability exists, the court hearing an ineffectiveness claim must consider the totality of the evidence before the fact finder. *Strickland v. Washington*, 466 U.S. 668, 691–96, 104 S.Ct. 2052, 2066–69, 80 L.Ed.2d 674 (1984); *Richardson v. State*, 719 S.W.2d 912, 915–16 (Mo.App. 1986).

Early in the morning of November 15, 1986, movant's brother Marvin Stewart was at 3010 Eads carrying a .38 caliber revolver. Seeing a police car approach and fearful that the police would find him in possession of the gun, Marvin dropped the gun in a vacant lot. Unable to locate the gun, Marvin returned to his home at 3111 Eads. When movant came home, Marvin told him about the gun and that he was going back to look for it. Movant said he would come down later.

The state's principal witness, James Stevens, was a friend of both the victim and movant. He had seen Marvin throw his gun down and helped him search for it. Thereafter, he left the vacant lot and went to the victim's house which was apparently located near the lot. When movant and Marvin returned to the lot to resume the search, the victim and Stevens were standing in front of the victim's house. Movant told them to come over, claiming Stevens had the gun. Together, the four men began searching for the gun. Movant pulled out his own .22 caliber handgun and, pressing his claim that Stevens had the lost gun, pointed his gun at Stevens and searched him. Finding no gun, movant then demanded to search the victim. The victim refused. Movant pulled his gun from his side, held it to the victim's head for about three to four seconds then pulled the trigger. The victim fell backward to the ground. Movant stooped over him and fired five more shots. Stevens ran from the scene to tell the victim's family what had happened.

No gun was found on the victim or at the scene. The deputy chief medical examiner found that six bullets had entered the victim's head. One bullet entered the right frontal portion of the scalp within the hair line. Three entered around the left ear, one entered the left forehead above the eyebrow and one entered upward along the front rim of the left ear.

Movant testified that his brother told him about the lost gun, that he got a flashlight and that they were looking for the gun when Stevens and the victim arrived and started their own search. He believed the victim had the gun and he testified the victim walked up and, addressing movant, said, "You think I got it, huh?" to which movant replied, "I don't think you got it man, I know you got it." At that the victim pulled the gun out saying he ought to kill movant and his brother. Movant testified, that at that point, "I pulled the .22 out and I continued to fire, and he fired. And I continued firing mine trying to stop him." According to movant, the victim fired first, and after shooting the victim movant fled, threw his gun away, went to his mother's house and was joined there by Marvin who arrived in a separate car. Marvin's testimony corroborated that of movant concerning who shot first. The jury deliberated slightly over three hours before returning a guilty verdict.

As stated previously, under *Strickland*, movant must show that the failure to call Laura Stewart as a witness had a prejudicial effect on his defense. The fact that it had some conceivable effect on the outcome is not sufficient. Rather, movant must show that there is a reasonable probability that if she testified the jury would have a reasonable doubt respecting guilt.

It is hard for me to conceive that a jury would have a reasonable doubt even were Laura called to testify. Movant's only defense was self defense. Steven's testimony was largely corroborated by the forensic evidence concerning the location of the bullet wounds in the victim's head; this evidence leads me to conclude there is no reasonable probability that Laura's testimony would have tipped the scales to movant.

*Strickland* teaches, however, that in determining prejudice, we must consider the totality of the evidence before the fact finder. Movant claims that detective Poelling's rebuttal testimony, that when questioned,

Marvin related that he was not at the shooting scene but at a party, so undermined Marvin's credibility that it was necessary to call Laura in surrebuttal to testify that she heard the conversation between Poelling and Marvin, and that Poelling lied when he testified Marvin told him he was not at the shooting.

On that issue, Marvin was confronted on cross-examination with the question as to whether or not he had said to the detective that he was at a party and didn't see the shooting. Marvin testified that his response to the officer when asked about the shooting was "I told him I didn't know what he was talking about. I didn't say that night I wasn't there."

On direct examination, Marvin testified he had thrown his gun down when he saw the police. When asked by defense counsel, "Have you ever been convicted of any felonies or misdemeanors?" he responded, "A couple of tickets, violation tickets," one of which he described as "revoked." However, on cross-examination he admitted that he had only six months earlier pled guilty to the felony of carrying a concealed weapon and that he had not told defense counsel of the conviction. The following exchanges also took place during cross-examination:

Q. Did [movant] have a gun with him that night?

A. No, not if I know it.

. . . .

Q. Who shot Richard Johnson?

A. I don't know.

. . . .

Q. He didn't shoot himself, did he?

A. I don't know that.

Q. You didn't know that?

A. No.

. . . .

Q. By the way, before you threw the gun down where were you carrying it on your person? Where was it?

A. It was in my pocket. I had it in my pocket.

Q. Concealed in your pocket?

A. Yes.

Q. You know that is against the law, to carry a concealed weapon, don't you?

A. I know that.

Apart from the strength of the state's case, I believe Marvin's testimony alone is sufficient to show there is no reasonable probability that Laura's testimony would have caused the jury to have a reasonable doubt respecting guilt. His own testimony shows he was evasive when asked by Poelling about the shooting. He said he didn't know who shot the victim, his brother didn't have a gun, he was carrying a concealed weapon on the evening of the crime and he threw it away to avoid detection. Finally, he lied under oath about his felony conviction. Marvin's own testimony undermined his credibility and it seems to me that additional testimony by Laura would have no effect on the outcome of the case.

While in *Sanders* and *O'Neal v. State*, 766 S.W.2d 91 (Mo. banc 1989), the motion court held an evidentiary hearing, the principles stated therein as to the rules guiding appellate review of ineffective assistance of counsel claims are equally applicable to cases in which an evidentiary hearing was denied. In *Strickland*, as here, the state trial court in Florida denied relief without first holding an evidentiary hearing. However, in a subsequent habeas corpus proceeding in a federal district court, an evidentiary hearing was held. The Supreme Court, speaking through Justice O'Connor, stated, "Moreover, the prejudice question is resolvable, and hence the ineffectiveness claim can be rejected, *without regard to the evidence presented at the District Court hearing. The state courts properly concluded that the ineffectiveness claim was meritless without holding an evidentiary hearing.*" *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071. (Emphasis added.)

The majority either finds prejudice, or fails to apply the second prong of the *Strickland* test. While the majority is concerned with the adequacy of the motion court's findings, I believe a clear reading of *Strickland*, *O'Neal* and *Sanders* demonstrates that an appellate court can decide the issue of prejudice in the first instance. I would go directly to the prejudice issue and, for the reasons discussed above, de-

cide it against movant. I would therefore affirm the judgment of the motion court.